## THOMAS ALLEN *vs.* ELIZABETH B. KIDD.

Essex. November 6, 1907. — February 25, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Evidence,* Public documents. *Practice, Civil,* Exceptions, Conduct of trial. *Words,* " Public records."

R. L. c. 35, § 5, which states what the words " public records " shall mean in construing the provision of that chapter, does not make the documents therein described public documents.

At the trial of an action of tort in the nature of trespass *quare clausum fregit* in which one question in controversy was as to the width of a certain street in a city, the city engineer of the city in which the street was, called as a witness by the defendant, testified that " it was customary " to keep the note books, in which assistants in his office had made memoranda as to the bounds and courses of streets, as public records. He then was allowed, subject to exception by the plaintiff, to testify as to the contents of such a book, the memoranda in which had been made by one who was living at the time of the trial but who was not called as a witness. In effect, the measurements given from the memoranda were in accordance with those given by surveyors who testified for the plaintiff. *Held,* that, even if the note book were a public document, it was not admissible as evidence of the truth of the facts therein stated ; *but* that, the plaintiff not being harmed by the admission of the evidence, the exception should be overruled.

In his charge to the jury in an action of tort in the nature of trespass *quare clausum fregit,* in which the plaintiff contended that the defendant, an owner of adjoining land, had built about twelve inches over the line upon the plaintiff's land, and in which the great preponderance of the evidence was in the plaintiff's favor, the presiding judge, after commenting unfavorably upon actions of such a nature, stated " I suggested to counsel yesterday, in the interest of public trials in the courts, and in the interests of the parties, that perhaps they would agree that, if the defendant were over the line, and the jury so found, you should assess all the damages by him for the value of the land and all the plaintiff has to suffer in consequence of it now and for all time, and have it once for all settled. The defendant's counsel said he was willing to do that, and the plaintiff's counsel said no, and he had a right to say no, because his client would not agree to it ; and whether he was stubborn or not is none of our business ; he had the constitutional right to do just what he was doing, and it is our duty, whether we think it is proper or not, to give him a fair and impartial trial " ; and, at the end of the charge stated, " Whether this is a suit, as it is said, for spite, or whether it is an unwise

suit or not, you must take it and decide it. The plaintiff has a right to be here; he has a right to claim his inch of land if he has it, and the defendant has a right to come here and defend; and it is your duty to sit down, and decide this question as best you can between them, and do justice in the case." At the conclusion of the charge, the plaintiff called the attention of the judge to the foregoing passages, but he refused to change the charge, stating that what he had already said as to the plaintiff's standing upon his rights ought not to affect them, " because he had a right to do just as he did." *Held*, that the presiding judge erred in incorporating into his charge facts which were not in evidence and did not affect the merits of the case, and which, if they had been offered in evidence, should have been excluded, and were likely to and probably did distract the attention of the jury from the consideration of the true merits of the issue.

LORING, J. This is an action of tort for a trespass *quare clausum fregit*, in which the defendant had a verdict, and the case is here on exceptions taken by the plaintiff.

The plaintiff and the defendant were the owners of adjoining lots, as shown on the accompanying plan.

The width of the defendant's lot was forty-one feet in place of the thirty-six feet shown on the plan, five feet of the Wright lot having been bought by her after she bought the Kidd lot thirty-six feet wide, shown on the plan.

The plaintiff's contention was that the defendant's building on Broadway was north of the division line between the two lots; that the building was one inch wider than the defendant's lot and covered ten and three fourths to twelve inches of the plaintiff's land on the Broadway end of the building; and that, when the building reached Cross Street, the northerly corner of the building was on the division line or slightly within it.

Two engineers testified on behalf of the plaintiff that the defendant's building was over the division line. One said that it

was ten and three fourths inches over and the other that it was twelve inches over. The first measured from Manchester Street and checked the result so obtained by the fences he found on the ground. The other got his result from the fences and checked it by measurements from Manchester Street.

The plans of both engineers show a stone bound fixing the centre line of Manchester Street. The stone was put in in 1875, eight years after deeds of the several lots shown on the plan were made by the original owner of the whole tract.

One of the defences set up by the defendant was that the side lines of Manchester Street could not be ascertained with precision. Manchester Street was conceded to be an ancient way, in existence before Lawrence became a city.

The defendant was allowed against the plaintiff's exception to prove by the present city engineer of the city of Lawrence what the note book of one Hatch showed as to the placing of the stone bound in the centre of Manchester Street in 1875. Hatch was an assistant engineer in the city engineer's office at that time, and it appeared that both he and one Coolidge, who was city engineer at that time, were living. Neither was called as a witness.

The present city engineer testified " that it is customary to keep all records of that nature in the city engineer's office as public records; that the plans made from these minutes are also kept as part of the records of the engineer's office, but that all the records taken on the street are not put on the plans because they encumber them too much." He was then allowed to testify in answer to the question, " How was the centre line of Manchester Street determined." " I found on the notes there was a measurement of twenty-five feet taken from the northwesterly corner of Manchester and Washington Streets. At that point there is an angle in the street, and I found by calculations from angles and measurements given at the corner of Broadway and Manchester Street . . . — from these notes, — that the centre line as laid out from the ground was undoubtedly measured from the fence line, I found that by calculation from the northwest corner of Broadway and Manchester Street, the distance is 25.6 feet from the fence line, and from the southwesterly corner the calculation is 25.3 feet making a total distance between the

fence lines across Manchester Street, on the westerly line of Broadway, 50.9 feet."

1. We are of opinion that this evidence was wrongly admitted. But we are also of opinion that the plaintiff was not harmed by its admission.

The defendant's contention is that the note book in question is made a public document by R. L. c. 35, § 5, and was admissible as a public document.

But R. L. c. 35, § 5, does not make the documents therein described public documents. All that that act does is to provide that " in construing the provisions of this chapter and other statutes, the words ' public records ' shall " include the documents there described.

In the second place, if Hatch's note book was a public document it was not admissible. There is no rule of evidence which makes public documents competent evidence of the truth of the facts therein stated. The note book in question was used as testifying to the facts therein set forth just as Hatch (who was alive) would have testified to those facts had he been put upon the stand.

The defendant has sought to overcome this difficulty by citing *Gurney* v. *Howe*, 9 Gray, 404. That case decided that an official record of a fact which it is the duty of a public officer to perform and record can be introduced in evidence as testimony of the truth of the facts therein stated. To the same effect see *Kennedy* v. *Doyle*, 10 Allen, 161, 163; *Pells* v. *Webquish*, 129 Mass. 469. But we know of no law which makes it the official duty of a city engineer to fix on the ground the side lines of all or of such city streets as he thinks wise, and to make a record of the line so fixed.

The plaintiff however was not harmed by the admission of this evidence. It confirmed the accuracy of the plans of the plaintiff's engineers. It did not disprove or tend to disprove them in any particular. Manchester Street is shown on the plaintiff's plans to be fifty feet wide. If it was, it would necessarily measure more between the fences on the side lines of Broadway which intersects it at a greater angle than a right angle, and from these plans it would appear to be about fifty and nine tenths inches between the fences on the angle in question.

2. We are of opinion that the exception which was taken to the charge of the presiding judge must be sustained.

The presiding judge began his charge by a reference to some litigation between two farmers as to a division line where the land was of little or no value, but the farmers had been ruined by paying lawyers to try the case. He added that the farmers had their constitutional rights. He then went on to say that the action before them was an action of trespass, and that if the jury found for the plaintiff " he may keep bringing actions of trespass from now as long as he pleases, covering one day or six months, continuously; that is his right under the law. I perhaps exceeded my judicial authority, but I suggested to counsel yesterday, in the interest of public trials in the courts, and in the interests of the parties, that perhaps they would agree, — make a written stipulation that the defendant, if he were over the line, and the jury so found, that you should assess all the damages by him for the value of the land and all the plaintiff has to suffer in consequence of it now and for all time, and have it once for all settled. The defendant's counsel said he was willing to do that, and the plaintiff's counsel said no, and they had a right to say no, because his client would not agree to it; and whether he was stubborn or not is none of our business; he had the constitutional right to do just what he was doing, and it is our duty whether we think it proper or not, to give him a fair and impartial trial."

Toward the end of his charge the presiding judge came back to this same matter. After stating that the plaintiff was entitled to damages for six years next before the date of the writ, he went on to say : " Well, if you adopt the other course, as was suggested, to wit, to assess damages for all time, why you can say what six inches of land, or one inch or a foot, or whatever it may be, — how much damage it was for the plaintiff for taking it, for all time. But, as I say, the plaintiff has a perfect right to have that issue tried, you may say how much the damage is between the dates I have stated. I cannot help you on that; you have heard the property described, and you have heard the arguments. I suppose the plaintiff intends to settle in this suit, if he can, if there is a trespass, and the amount of damages he does not care about. Of course, if it is established that there is

a trespass, then the defendant has either to take down his building so far as it overlaps, or he has to pay continual damages, and the plaintiff has a right to take that position and make that claim.  Well, gentlemen, whether this is a suit, as it is said, for spite, or whether it is an unwise suit or not, you must take it and decide it.  The plaintiff has a right to be here; he has a right to claim his inch of land if he has it, and the defendant has a right to come here and defend; and it is your duty to sit down and decide this question as best you can between them, and do justice in the case."

At the conclusion of the charge the plaintiff excepted *inter alia* " to that part in the court's charge where he alluded to and informed the jury of the efforts of the court to make the parties agree to a compromise." *

The presiding judge did not, in our opinion, exceed his judicial authority in suggesting to the parties that they should let the jury assess the damages suffered by the plaintiff if the defendant's building was erected in part on his land.  It is not beyond the judicial proprieties for a judge in a proper case to seek to end litigation by suggesting action which the law does not call for.

But we are of opinion that the presiding judge did exceed his judicial authority when he stated to the jury (1) the suggestion which he had made to counsel, and (2) the fact that the plaintiff had refused to accede to it; particularly when his subsequent reference to this refusal of the plaintiff might have been construed by the jury to be an intimation by him that in his opinion the plaintiff was or might be thought to be " stubborn," and the action brought by him and then to be decided by the jury was or might be thought to be brought " for spite."

By telling the jury of the suggestion he had made of an agreement settling the damages for all time in the future and of the

---

* After the plaintiff had excepted as set forth in the opinion, the presiding judge stated to the jury: " Plaintiff's counsel . . . asks me . . . to save an exception because I said to you in the discharge of my duty I tried to make the parties agree to submit this issue once for all.  I decline to take back that statement, but I have already said to you that it must not affect the rights of the plaintiff without regard to whether he would settle or whether he would consent to have it all tried together, and I told you he had a right to stand on his right, and therefore what I said about that should not affect you, because he did have a right to do just as he did."

plaintiff's refusal to accede to it, the presiding judge thrust into the case a fact not affecting the merits of the issue which the jury were to decide. Further than that, it was a fact likely to appeal to the sympathy of the jury and so to distract them from a consideration of the true merits of the issue. To this must be added the subsequent reference made by the presiding judge to the plaintiff's refusal which (as we have said) might be understood to be an intimation that the plaintiff was stubborn and was pressing his action out of spite.

In *Beal* v. *Lowell & Dracut Street Railway*, 157 Mass. 444, the defendant asked to have a verdict set aside because the "tone of the charge was unfavorable to the plaintiff." In dealing with this request the court said : "But this is a matter not to be revised on a bill of exceptions, unless some rule of law was incorrectly stated, or unless the charge violated the statute which provides that the courts shall not charge juries with respect to matters of fact, Pub. Sts. c. 153, § 5, or unless it is apparent that the attention of the jury was so far diverted from the true questions of the case as to amount to a mistrial and a failure of justice "; and that case was disposed of on the ground that "The attention of the jury was not diverted from the true questions of the case, but was very pointedly called to those questions, and we are unable to see that the result of the trial shows any failure of justice." *Beal* v. *Lowell & Dracut Street Railway*, *ubi supra*, was cited with approval in *Bishop* v. *Journal Newspaper Co.* 168 Mass. 327, 332.

The case at bar is a much stronger case than *Beal* v. *Lowell & Dracut Street Railway*, *ubi supra*. In the first place, in the case at bar a fact was interjected into the case by the presiding judge, and in the second place, the matter now complained of was brought to his attention at the conclusion of his charge. Had the fact interjected into the case in the action now before us been admitted in evidence by the judge during the progress of the trial under the objection and exception of the plaintiff, there would be now no question of his right to a new trial. We cannot see why the plaintiff in the case at bar was less harmed by what took place than he would have been under those circumstances.

If, however, the plaintiff must go farther and bring himself within the rule laid down in *Beal* v. *Lowell & Dracut Street*

*Railway, ubi supra,* we are of opinion that he has done so. The great preponderance of the evidence was in his favor. That is enough.

*Exceptions sustained.*

*W. Coulson,* (*D. J. Murphy* with him,) for the plaintiff.
*H. R. Dow,* for the defendant.