BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA *v.* BARTON ET AL.

[No. 6,904.   Filed June 10, 1910.]

1. BENEFICIAL ASSOCIATIONS.—*Waiver of Constitutional Provision.* —*Reply.*—*Conclusions.*—A reply, in an action against a beneficial association, that defendant waived the suspension of the deceased member, alleged in defendant's answer, by accepting, unconditionally, payment of the dues for the delinquent months, as being in full compliance with the contract, the same as if the amounts had been paid at the stipulated times, and that defendant thereby waived a suspension for failure to pay, shows a waiver, and does not state a conclusion.   p. 164.

2. BENEFICIAL ASSOCIATIONS.—*Failure to Pay Assessments.*—*Forfeitures.*—*Instructions.*—An instruction that defendant beneficial association to sustain its defense that the deceased member suffered death from his own improper conduct—excessive use of alcohol—must show that such conduct was the proximate cause of his death, is correct, the fact of its contributing to his death being insufficient to defeat the beneficiary, since forfeitures are strictly construed against the insurer.   p. 165.

3. BENEFICIAL ASSOCIATIONS.—*Failure to Pay Assessments.*—*Suspension.*—*Waiver.*—*Instructions.*—An instruction that if defendant beneficial association's local officer collected the assured's three delinquent assessments unconditionally and as being in full compliance with the contract, and as having been paid when due, and did not report such arrearages until the receipt of the proofs

of death, and that upon receipt of such information the association did not repudiate such officer's acts, but retained the money and thereby ratified such acts and estopped themselves from setting up such defense—then if you find for the plaintiff you will assess the damages according to the contract, is not erroneous, where there was evidence tending to establish such facts. p. 166.

4. BENEFICIAL ASSOCIATIONS.—*Failure to Pay Assessments.— Forfeiture.—Instructions.*—In an action against a beneficial association, the by-laws providing that "any member indebted for three months' dues * * * shall stand suspended," and that a "suspended member shall not again be placed in benefits until six months from the date of settling in full all arrearages," an instruction that if the assured had failed to pay his dues for three months he was not a beneficial member until six months thereafter, and would be entitled only to a certain small stipulated amount, was correctly refused, where there was evidence of a waiver of such suspension. p. 166.

5. BENEFICIAL ASSOCIATIONS.— *Evidence.— Public Documents.— Boards of Health.—Causes of Death.*—In an action upon a benefit certificate providing for a forfeiture if the assured should come to his death by his own improper conduct, a record of the board of health, required by the state law, or by a municipal ordinance, that he died from acute alcoholism is inadmissible on behalf of the defendant, as tending to show the cause of death. Roby and Hadley, JJ., dissent. p. 167.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by Adelaide Barton and others against the Brotherhood of Painters, Decorators and Paperhangers of America. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*George A. Cunningham,* for appellant.

*George K. Denton* and *E. H. Ireland,* for appellees.

COMSTOCK, C. J.—Appellees, as heirs at law of Herbert Sturtevant, sued appellant to recover the sum of $200, to which, it is alleged, they were entitled, by reason of the membership of said Sturtevant in appellant association.

The complaint alleges that appellant is a corporation engaged in the business, among other things, of insuring the lives of its members, and had been so engaged for a period

of ten years; that there was in force, during said period, certain by-laws duly enacted by appellant, as follows:

"Section 93. A full beneficial member, not over fifty, years of age and in sound health when admitted to membership, shall be entitled to benefits as follows: Wife's funeral benefit of $25 on one year's membership, and $50 on two or more years' membership; member's death or permanent total disability benefit of $50 on one year's membership; $100 on two years' membership; $150 on three years' membership and $200 on four or more years' membership, provided the member has not been indebted for an amount equal to three months' dues, but has been in continuous good standing during the period for which benefits are claimed immediately preceding his death or disability or his wife's death. * * * On the death of a member legally in benefit, his wife, if not separated or divorced, or legal heirs shall be entitled to the member's funeral benefit as prescribed in this constitution."

In 1903 said Sturtevant, being forty years of age, became a member of appellant association, paid the required admission fees, and thereafter paid regularly all fees, dues and assessments and performed all the conditions required of him by the terms of his contract with appellant until February 19, 1907, when he died. In March, 1907, proofs of death were made out and delivered to appellant, which denied liability, solely on the ground that Sturtevant came to his death from a cause, which, under the by-laws, did not admit of benefits.

Appellant answered in two paragraphs. The first alleges that during Sturtevant's membership appellant's constitution contained the following provision:

"Section 103. Any member or wife of member whose disability or death is caused by his or her improper conduct or through disease incurred previous to his joining the brotherhood, or through his exposing himself to risks to which members are not usually liable (his country's service in time of war, excepted), shall not be entitled to any benefits from the brotherhood, nor shall their legal heirs or beneficiaries be entitled to any benefits."

That appellees are not entitled to recover, for the reason that Sturtevant's death was caused by his own improper conduct in the use of intoxicating liquors, and that his death was caused by acute alcoholism, resulting from such improper use.

The second paragraph attempts to answer so much of the complaint as seeks to recover more than $50. It alleges that appellant is not an insurance company, but is a beneficial order depending solely upon the fees and dues paid by members for its maintenance; that the monthly dues payable by Sturtevant were seventy-five cents, payable on or before the last day of each month; that during his membership in appellant association section forty-six of its constitution was as follows:

"Any member indebted for three months' dues, or an amount equal to three months' dues, shall stand suspended, a vote of the L. U. not being required to suspend him. His membership book shall be deemed sufficient notice of arrears, and no further notice will be required from the financial secretary. A suspended member shall not be again placed in benefits until six months from the date of settling in full all arrearages. Members suspended during the first year of membership shall not be entitled to benefits until they have been eighteen months in membership. No member shall be credited with dues until all fines, assessments and other indebtedness against him are paid in full. Dues received between meeting nights shall be credited on the day they are received."

Said paragraph also sets out section ninety-three of appellant's constitution as set out in the complaint, and alleges that Sturtevant failed to pay his dues for the months of January, February and March, 1905, when they became due, and did not pay the dues for any one of said months until April 5, 1905, by reason whereof he was on April 1, 1905, indebted to appellant for three months" dues, and, by the provisions of said section forty-six, became suspended, and thereupon ceased to be a member of defendant and did not thereafter become a full beneficial member until the expira-

tion of six months from the date of the payment of such arrearages, or October 5, 1905.

Appellees replied in two paragraphs. The first a general denial. The second alleges that appellant waived the suspension of Sturtevant for failure to pay his dues, as alleged in the second paragraph of answer, and for his failure to pay said dues prior to the time they were paid; that appellant accepted the dues for said months of January, February and March on April 5, unconditionally, and as being in full compliance with the terms of the contract, to the same extent as if they had been paid prior to the first day of April and treated the dues when so paid as having been paid before said dues, or any of them, were three months due, and thereby waived the suspension of Sturtevant as provided in the constitution.

A demurrer was overruled to the second paragraph of reply for want of sufficient facts, and the cause was submitted to trial by a jury, resulting in a verdict in favor of appellees for $200. Over appellant's motion for a new trial, judgment was rendered thereon.

The errors relied on for a reversal are, the insufficiency of the second paragraph of reply, error of the court in instructing the jury, and the rejection of certain evidence offered by appellant.

Against the sufficiency of said paragraph of reply, it is argued that it does not state any facts amounting to a waiver, and that under the construction of section ninety-three 1. of appellant's constitution, and the complaint, the question of waiver did not arise in the case.

Said paragraph alleges that appellant company waived the suspension of said member by accepting, unconditionally, payment of the dues for January, February and March, prior to April 5, 1905, the date at which said dues were paid, as being in full compliance with the terms of the contract to the same extent as if they had been paid prior to April 1, and treated them when so paid as having been paid before

said dues or any of them were three months due, and thereby waived the suspension of the member for failure to pay said dues prior to the time they were paid and any loss of rights on his part or on the part of his beneficiaries by reason of said failure to pay. It has been held by this court that a statement that a party waives a certain right is the statement of a fact. *German-American Ins. Co.* v. *Sanders* (1897), 17 Ind. App. 134, 138. The question of waiver is one of intention, but we are of the opinion that the facts stated are sufficient to create a waiver. Upon the subject of waiver of forfeiture, we cite the following cases: *Supreme Court of Honor* v. *Sullivan* (1901), 26 Ind. App. 60; *Supreme Tribe, etc.,* v. *Hall* (1900), 24 Ind. App. 316, 79 Am. St. 262; *Supreme Tent, etc.,* v. *Volkert* (1900), 25 Ind. App. 627; *Brotherhood of Painters, etc.,* v. *Moore* (1905), 36 Ind. App. 580; *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651.

It is claimed that the court erred in giving instructions three and five, requested by appellees. In said third instruction the jury was told that appellant to sustain its defense—that the member came to his death by his own improper conduct—must show that such improper conduct, to wit, the excessive use of alcohol, was the proximate cause of his death. Appellant contends that it is sufficient to show that such improper conduct contributed to his death.

Provisions of forfeiture are, as a rule, strictly construed as against the insurer. In 25 Cyc. 876, the editor says: "Where the company seeks relief from liability on account of a death expressly or impliedly excepted from the terms of the policy, it must appear in order to sustain the defense that the death was the proximate result of a prohibited cause."

Instruction five is as follows: "You are further instructed that if the local union officer who collected the assessments

for January, February and March, 1905, collected the

3.   same unconditionally, and as being in full compliance
with the terms of the contract, and as having been
paid when due, and did not treat said payment as having
been made when three months in arrears, but treated the
same as having been paid prior to April 1, 1905, and did not
report said member as suspended, and that the head officers
did not know of these facts, and of the acts and conduct of
said decedent, until the receipt of proofs of death, yet upon
receipt of this information they did not repudiate the acts
of said local union officer, and did not offer to return the
money so collected, or any money thereafter collected, and
thereby ratified the acts of said officer of said local union
and estopped themselves from setting up said defenses—then
if you find for the plaintiff you will assess,'' etc.   Under the
evidence there was no error in this action of the court.
*United States, etc., Soc.* v. *Watson* (1908), 41 Ind. App. 452.

Appellant insists that its instructions three and four should
have been given.   Said third instruction would have told the

jury that under defendant's constitution any member

4.   indebted for three months' dues, or an amount equal
to three months' dues, should be suspended and not
again placed in benefits until six months from the date of
settling all arrearages, and if the jury found from the evi-
dence that on April 1, 1905, decedent was indebted for three
months' dues, or an amount equal thereto, he became
suspended, and was not a beneficial member until the expira-
tion of six months from payment of said arrearages; that if
it found that this payment was not made till April 5, 1905,
decedent would not again become a beneficial member until
six months from that date, and, under the constitution, would
be entitled to only $50 benefits provided for a membership of
one year in good standing.

Said fourth instruction would have told the jury that if
the evidence showed that on April 1, 1905, decedent was in
arrears for three months' dues, which were not paid until

April 5, 1905, then, under the constitution of defendant, plaintiffs were not entitled to recover more than $50. These instructions were properly refused.

    Complaint is made of the refusal to permit appellant to introduce in evidence the record of the board of health

5.   of the city of Evansville, on the question of the cause of death of decedent.

In the case of *Craiger* v. *Modern Woodmen, etc.* (1907), 40 Ind. App. 279, this court held that a coroner's verdict, although attached to proofs of death made by the beneficiary in conformity to blanks furnished by the company, was not admissible in evidence, and in the case of *Union Cent. Life Ins. Co.* v. *Hollowell* (1896), 14 Ind. App. 611, that there was no error in refusing to allow appellee to read in evidence a certified copy of the inquest of the coroner, upon the ground that the taking of the testimony was *ex parte,* and was not admissible as affirmative evidence in support of appellant's defense. The question here presented is within the principle of these cases.

It is claimed, in behalf of appellant, that the evidence was admissible under the acts of 1907 and 1909 (Acts 1907 p. 246, §1, §7607 Burns 1908, and Acts 1909 p. 342).

Said acts, among other things, make it the duty of all physicians to report to the health officers named therein, upon blank forms supplied by the state board of health, all deaths and births which occur under their supervision. They provide that all records of deaths shall be kept by the proper health officers in record books, the form of which shall be supplied by the state board of health; that any physician refusing or neglecting to make death reports, as provided in said acts, shall, upon conviction, be fined; that where a death occurs under the supervision of any superintendent or head of any institution, it shall immediately be reported by him, upon an official certificate, to the proper health officers. They also provide for the recording of marriages,

births and contagious diseases, and that the state board of health shall collect and tabulate the vital statistics.

The title of the act of 1907, *supra,* to wit, ''an act to collect accurate records of deaths, births, contagious diseases and marriages, prescribing the duties of the state board of health and of all health officers, in relation thereto, providing penalties for the violation of the provisions of this act, and repealing all acts in conflict,'' discloses its purpose. It was enacted in the exercise of the police power of the State to prevent the spread of contagious diseases, and generally to promote the public health. Within its legitimate objects and purposes, the record proved is proper evidence. *Blue* v. *Beach* (1900), 155 Ind. 121, 50 L. R. A. 64, 80 Am. St. 195. It does not purport to interfere with private rights of citizens, not to create a new rule of evidence.

In the case of *Beglin* v. *Metropolitan Life Ins. Co.* (1903), 173 N. Y. 374, 66 N. E. 102 (reversing *Beglin* v. *Metropolitan Life Ins. Co.* [1901], 57 App. Div. 629, 68 N. Y. Supp. 1133), the action was brought to recover on a policy of insurance on the life of Catherine T. Beglin. It was there said: ''The written application contained, among other questions, the following: 'Has either parent or any brother or sister died of consumption or any pulmonary or constitutional disease?' To this question the applicant answered in the negative. * * * Upon the trial the defendant offered in evidence a certified copy of the records of the board of health of the city of Albany for the month of January, 1889, and this was followed by an offer of the original record. The receipt of these records was objected to upon the ground that they were hearsay. * * * The records were to the effect that the mother of [the insured] died in the city of Albany on the 2d day of January, 1889, and that the chief cause of death was phthisis pulmonalis.'' It was further said: ''We shall not stop to consider that question [whether the local or general law was in force], but shall assume that the general statute was in force, and that it

required a registration of births, marriages and deaths, including the cause of death; and that this record was made *prima facie* evidence of the facts therein set forth. This statute was a police regulation, required for public purposes and became *prima facie* evidence so far as concerns questions arising under its provisions which involve public rights. But we think it was not the intention of the legislature to change the common-law rule of evidence in controversies of private parties growing out of contract, and that the provisions of the statute should not be construed as applicable to such cases. This, in effect, was what we held in the case of *Davis* v. *Supreme Lodge, etc.* [1900], 165 N. Y. 159, 58 N. E. 891, also in *Buffalo Loan, etc., Co.* v. *Knights Templar, etc.* [1891], 126 N. Y. 450, 27 N. E. 942, 22 Am. St. 839. The question here presented was elaborately discussed in the case of *Davis* v. *Supreme Lodge, etc., supra,* and we regard it as controlling upon the question now presented.''

In the case last cited, counsel for defendant produced the records of the board of health of Brooklyn, which were identified by the clerk of the department, and offered to prove, by the original certificate filed by the attending physician, the cause of death of certain relatives of the insured. The court inquired if the evidence was offered to prove the cause of death, and defendant's counsel replied that it was. The court thereupon excluded the record. The court said: ''It should be noted also, that it was not offered to prove the fact of death, since there was no issue on that question, but solely to prove the cause of death, and that too not in any local matter over which the health department had jurisdiction, but in a controversy concerning the enforcement of a contract obligation between private parties in a court of general jurisdiction. This local statute, when reasonably and properly construed and understood, and limited to the purpose for which it was enacted, does not in my opinion, abolish any part of the code or affect any general rule of evidence applicable throughout the state at the time of its enactment.''

It is also said in the same case: "Like all the rest of the charter it is local in its operation and limited to the boundaries of the city. It is a law for the city and the health department, and not for the state. The collection and tabulation of vital statistics is one of the functions which the state has delegated to the health department in the locality, but there was no intention to abolish a general rule of law relating to evidence generally, and to substitute a new one in its place, as the learned counsel for the defendant contends. It may well be that the records are competent to prove the fact of death, or prove marriages or births. It is quite possible that in some cases they might be competent on questions relating to pedigree. These facts could always, at common law, be established by a species of hearsay evidence, but the cause of death in a litigation between private parties, concerning the obligations of a contract of life insurance, must be established, when material, by common-law proof, and that is precisely what this court has held."

In the case of *Sovereign Camp, etc., v. Grandon* (1902), 64 Neb. 39, 89 N. W. 448, an ordinance of the city of Omaha made it the duty of every undertaker or other person, before removing any corpse for burial, to obtain from the secretary of the board of health a permit to do so, and provided that before obtaining such permit, he should deposit with said secretary a certificate setting forth, among other matters, the cause and date of death, and the duration of last illness of decedent, which certificate should be signed by the physician or surgeon in attendance at the time of death. In case no physician or surgeon had attended decedent, then the certificate should be made by some relative or attendant. The court said: "It is a mere police regulation, and is not intended for the purpose of supplying the public at large with information upon which reliance may be placed in the business affairs of the community. We do not think the record is of such character as to entitle it to be received in evidence, as affecting the interest of a party to a litigation.  *  *  *

If signed by a physician, it contains matter relating to his patient which the physician is not allowed to disclose as a witness upon the trial against the objection of his patient or those representing him. That a record of this character, reciting privileged communications, may be used in evidence against a party where the testimony of the physician making it could not be received, is a proposition so inconsistent with reason and natural rules of justice that we cannot give our consent thereto.''

In the case of *Buffalo Loan, etc., Co.* v. *Knights Templar, etc.* (1890), 56 Hun 303, 9 N. Y. Supp. 346, 347, the court said: ''There is no rule making the records or books of the board of health evidence as to the cause of death on the trial of an action at law where that question is material. Nothing but common-law evidence would defeat a recovery in the absence of a statute or constitutional provision making other evidence competent. There is no law making the records of the board of health of the city of Buffalo evidence upon a trial between parties who do not make the records or books, and have no duty devolving on them on that subject.''

Whether evidence of the character in question is required to be kept by virtue of a municipal ordinance authorized by statute, or by statute, can make no difference in principle. In each instance, it is an attempt to prove, by *ex parte* testimony, a material fact in a case between private parties who are strangers to the record. In the absence of a positive declaration on the part of the legislature it will not be presumed that the rights of private citizens are to be foreclosed by the opinion of a public health officer, contrary to the general rule of evidence, however learned or conscientious that officer may be.

In the case of *Rohloff* v. *Aid Assn., etc.* (1906), 130 Wis. 61, 109 N. W. 989, the exclusion from the consideration of the jury of a certified copy of the certificate of the death of decedent, made by the witness Doctor Ellsworth and the health officer, and filed in the register's office, as required by §§1024,

1024a Wis. Stat. 1898, was upheld, and such evidence was held incompetent.

The decisions upon this question are not in harmony, but those heretofore cited and quoted from sustain the ruling of the trial court, and, we believe, are supported by the best reasoning. Those to the contrary, for the most part are based upon the theory that all public records are, as a rule, admissible in evidence, and do not discuss the manifest conflict between such evidence and the statutory and common-law rule, which makes privileged the knowledge of a physician acquired in his professional capacity.

In the following cases it has been held that evidence of this character is competent. *Hennessy* v. *Metropolitan Life Ins. Co.* (1902), 74 Conn. 699, 52 Atl. 490; *State* v. *McDonald* (1909), (Or.), 104 Pac. 967; *Allen* v. *Kidd* (1908), 197 Mass. 256, 84 N. E. 122; *Vanderbilt* v. *Mitchell* (1907), 72 N. J. Eq. 910, 67 Atl. 97, 14 L. R. A. (N. S.) 304; *State* v. *Pabst* (1909), 139 Wis. 561, 121 N. W. 351. They are based upon the proposition that they are public records, and upon the theory that "it would always be difficult, and often impossible, to prove facts of a public nature, by means of actual testimony upon oath." 1 Greenleaf, Evidence (Lewis's ed.) §483.

The public is interested in tabulated vital statistics which, as a rule, may be approximately correct. The rights of the public, by this wholesome law, are subserved when they have the benefit of the facts collected under its provisions, but no public interest is promoted in the use of such data to prevent or retard (contrary to established rules of evidence) the assertion of private rights between individuals and in which the public has no concern.

Judgment affirmed.

Watson, P. J., Myers and Rabb, JJ., concur.

Roby and Hadley, JJ., dissent.

## DISSENTING OPINION.

ROBY, J.—I think this judgment should be reversed.

The appellant offered in evidence the record of the report of death of Herbert Sturtevant, made to the board of health of the city of Evansville, in which the cause of death was stated as ''acute alcoholism.'' This evidence was excluded, and an exception reserved. The admissibility in evidence of death reports made in the collecting of vital statistics is presented for the first time in this court. It is contended that such reports are not required by law, but this is a mistaken view. Section one of the act of April 10, 1907 (Acts 1907, p. 246, §7607 Burns 1908) provides ''that it shall be the duty of all physicians * * * to report upon blank forms supplied by the state board of health, all deaths * * * which may occur under their supervision. * * * The reports of deaths * * * shall be made immediately. * * * Reports of deaths * * * which occur in cities and towns, shall be made to the health officers of said cities and towns, and when they occur in the county outside of cities and towns, they shall be reported to the county health officer or his deputies; but reports of deaths occurring outside of cities and towns may be made to any health officer. * * * All records of deaths * * * shall be kept by health officers in record books, the forms of which shall be supplied by the state board of health. Any physician * * * refusing or neglecting to make death * * * reports as herein provided, shall, upon conviction, be fined for the first offense in any sum not less than $10 or more than $50, and any physician * * * who is convicted the second time for the violation of any of the above provisions shall be fined not less than $50 or more than $100, and any physician * * * who is convicted the third time for the violation of any of the above provisions, shall be fined $100.''

Section two of the act of March 6, 1909 (Acts 1909 p. 342), amending the act of February 19, 1891, provides that the

state board of health "shall study the vital statistics and endeavor to make intelligent and profitable use of the collected records of death and sickness among the people. They shall have [be] the superior health board of the State, to which all other health boards are subordinate, and they shall have supervision of the system of registration of births, deaths, marriages and infectious diseases and they shall make up from time to time, such blank forms as they may deem necessary, for the collection, registration, and report of vital and sanitary statistics throughout the State. They shall annually on or before the first of December make a report to the Governor of their transactions and expenditures for the year ending September 30, next preceding, with such suggestions with regard to legislation as they may deem important in reference to the public health."

Section seven of said act, prescribing powers and duties of health officers, is, in part, as follows: "It shall be the duty of the state health commissioner and of county health commissioners and city and town health officers, within their respective jurisdictions to enforce the health laws, ordinances, orders and rules of their own and superior boards of health; to collect, record and report the vital statistics of their respective jurisdictions, to keep full and permanent records of their public health work, minutes of all meetings of their respective boards, and to make a monthly report of the work done by them and their deputies to their respective boards; said report, after approval, to be made of permanent record. Reports of county health commissioners shall be made to the state board of health, and careful records of said reports shall be kept in county health record books."

In accordance with the provisions of these acts, the state board of health has made up forms for the collection, registration and report of vital and sanitary statistics, and has promulgated rules therefor. The form adopted is known as the United States form, and is designed not only to elicit all pertinent facts, but to produce uniformity among the states.

That the legislature had authority to empower the board of health to act in the premises, as it has done, is not an open question. *Blue* v. *Beach* (1900), 155 Ind. 121, 50 L. R. A. 64, 80 Am. St. 195; *Isenhour* v. *State* (1901), 157 Ind. 517, 54 L. R. A. 787; *City of Frankfort* v. *Irvin* (1904), 34 Ind. App. 280, 107 Am. St. 173; *Anable* v. *Board, etc.* (1904), 34 Ind. App. 72, 107 Am. St. 173; *Monroe* v. *City of Bluffton* (1903), 31 Ind. App. 269.

The importance of complete, accurate, uniform and permanent records of births, marriages and deaths is better understood by students of sociological problems than by the public generally, but the practical value of such records has become a matter of common knowledge. The work is aptly termed "the bookkeeping of humanity." By means of it the prevention of pestilence and disease is made possible. The point of attack is indicated, the character of the peril made plain, and the effort to combat it is intelligently directed. The fact of death is supplemented by the causes thereof and the necessity for learning them requires that the attending physician state, in writing, for the benefit of all the people, facts which, as between himself and his patient, would otherwise be privileged. The value of vital statistics is by no means restricted to protection against disease. They are efficient in lengthening the average of life; but they also mark the preëminence of man over animals, in that he alone preserves or can preserve the history of his race, clan and family. The pride of ancestry and the desire to be known to posterity are more than a sentiment. Questions of inheritance, collateral as well as direct, are constantly arising, and as population and wealth increase will more and more frequently arise, which otherwise would be impossible of satisfactory solution. The devolution of personal and the descent of real property are matters of importance. The facts which are stated by the physician are facts which he knows. Other facts included in the report are of such a

character as readily to be obtainable at a time when no temptation to mistake them can ordinarily exist.

The system of vital statistics which now obtains in Indiana is a source of pride to those who are familiar with it. From three to five hundred certified copies of death returns are made each year by the state board of health from the originals in its possession. These copies are used in the departments of the government, largely to determine matters connected with pensions, and in sister states and foreign countries with regard to a multitude of subjects, and it would be remarkable were they to be excluded when offered in the courts of this State in cases to whose issues they are relevant. It is not uncommon to find statutes providing that nonjudicial records of this class shall be *prima facie* evidence, but such statutes are not essential to the admissibility of such records. The following extract from 1 Greenleaf, Evidence (Lewis's ed.) §483, states the applicable doctrine: "These documents, as well as all others of a public nature, are generally admissible in evidence, notwithstanding their authenticity is not confirmed by those usual and ordinary tests of truth, the obligation of an oath, and the power of cross-examining the persons, on whose authority the truth of the documents depends. The extraordinary degree of confidence, it has been remarked, which is reposed in such documents, is founded principally upon the circumstance, that they have been made by authorized and accredited agents, appointed for the purpose; but partly also on the publicity of their subject-matter. Where the particular facts are inquired into and recorded for the benefit of the public, those who are empowered to act in making such investigations and memorials, are in fact the agents of all the individuals who compose the State; and every member of the community may be supposed to be privy to the investigation. On the ground, therefore, of the credit due to agents so empowered, and of the public nature of the facts themselves, such documents are entitled to an extraordinary

degree of confidence; and it is not necessary that they should be confirmed and sanctioned by the ordinary tests of truth. Besides this, it would always be difficult, and often impossible, to prove facts of a public nature, by means of actual witnesses upon oath." 3 Wigmore, Evidence §§1643-1646; *Evanston* v. *Gunn* (1878), 99 U. S. 660, 25 L. Ed. 306; *City of Garrett* v. *Winterich* (1909), 44 Ind. App. 322; 10 Ency. Ev. 716-740.

It is objected that the fact stated by the physician is privileged, under subdivision four of §520 Burns 1908, §497 R. S. 1881. This statute must be read in connection with the later ones heretofore cited, by which the physician is directed not only to make the fact public, but is penalized upon his failing to do so. Whether the privilege may now be claimed where the physician is interrogated as a witness is not a question presented in this case, but it is clear that no such privilege can operate against the admission of a public record of the fact. *State* v. *Pabst* (1909), 139 Wis. 561, 121 N. W. 351, 360.

The case of *Buffalo Loan, etc., Co.* v. *Knights Templar, etc.* (1891), 126 N. Y. 450, 27 N. E. 942, 22 Am. St. 839, is cited in support of the ruling. That decision is based upon the statement of fact that the record there offered was of local and special nature. This widely differentiates the case from the one at bar. The records kept by authority of the statute in Indiana are not local or special, but comprehensive as the acts before referred to show.

In the case of *Hoffman* v. *Metropolitan Life Ins. Co.* (1909), 135 App. Div. 739, 119 N. Y. Supp. 978, it is held that a transcript from the records of death reported to the department of health of the city of New York, certified by the chief clerk and the seal of the department in which the cause of death was given as "alcoholism, chronic Brights" was competent evidence. The law in New York, as shown by these two decisions, is not persuasive of anything. In the

case of *National Council, etc.* v. *O'Brien* (1904), 112 Ill. App. 40, which was an action upon a life insurance policy, where the defense was that the deceased in his application misrepresented the cause of the death of a sister, it was held that a certified copy of a certificate of death, duly filed and recorded, is competent evidence to prove the cause of the death of the person therein specified, and its exclusion constitutes reversible error. This decision is squarely in point. In Connecticut, on an issue as to the cause of death, a certified copy of the "death record" from the public records of birth, deaths and marriages of the city where the party died, is admissible both as independent evidence of the facts recorded and in corroboration of the testimony of the attending physician. *Hennessy* v. *Metropolitan Life Ins. Co.* (1902), 74 Conn. 699, 52 Atl. 490. The question has been many times decided. *State* v. *McDonald* (1909) (Or.), 104 Pac. 967; *Allen* v. *Kidd* (1908), 197 Mass. 256, 84 N. E. 122; *Vanderbilt* v. *Mitchell* (1907), 72 N. J. Eq. 910, 67 Atl. 97, 14 L. R. A. (N. S.) 304; *State* v. *Pabst* (1909), 139 Wis. 561, 121 N. W. 351.

It is also urged that the evidence was properly excluded on the authority of *Craiger* v. *Modern Woodmen, etc.* (1907), 40 Ind. App. 279, and *Union Central Life Ins. Co.* v. *Hollowell* (1896), 14 Ind. App. 611. It was held in these cases that the evidence of witnesses taken and transcribed by the coroner and filed by him could not be introduced in lieu of the witnesses themselves. The distinction between the verdict and the transcript of evidence, if there is any (3 Ency. Ev. 573) was not considered, and the decisions are in accord with the great weight of American authority. Note to *Aetna Life Ins. Co.* v. *Milward* (1904), 68 L. R. A. 285, 296.

The dissimilarity of the verdict returned by a coroner in an investigation carried on for the purpose of uncovering crime, if any exists, and making the evidence thereby accessible to the State, and a death report made in the collection of vital statistics, is too plain to require elaboration. The

coroner's investigation is on a par with a proceeding to "bind over."

It was suggested during the consideration of this appeal, that physicians do not truthfully state the causes of death, and an illustration given was that no physician will report that his patient died from syphilis. If any such false standard of professional conduct prevails among the profession, it is not manifested by the record offered, the cause of death evidently not being stated for the purpose of apology. The illustration made, even if true, is not conclusive, since the disease named rarely results in death except in a secondary manner. In any event the objection goes to the weight and not the admissibility of the evidence, the report being received in all cases for what it is worth.

It is also suggested that the statement of the cause of death is a conclusion which ought not to be given without the facts upon which it is based.

It is a familiar rule that a physician may testify to the cause of death from personal examination or knowledge. The rule extends only to the immediate cause of death, but to that extent it is fixed. 1 Greenleaf, Evidence (Lewis's ed.) §440; *Green* v. *Ashland Water Co.* (1898), 101 Wis. 258, 70 Am. St. 911, 43 L. R. A. 117, 122.

I very much regret that this court should refuse to apply common-law rules which have never barred public records of deaths, births and marriages, including therein, of necessity, not only the bare fact of death, birth or marriage, but the cause of death, the names of the parents and the names of the contracting parties, and most especially so as the refusal is expressive of hostility to the most enlightened efforts of the State to protect life and preserve property rights.