## OHLWINE ET AL. *v.* PFAFFMAN.

[No. 7,819.   Filed February 13, 1913.]

1. FRAUD.—*Action for Damages.—Waiver of Fraud.—Ratification of Contract.—Effect.*—The retention of property by a party who has suffered loss through another's fraud does not preclude him from maintaining an action for damages, nor does an express waiver of the fraud and explicit ratification of the contract, unless of such a character as to imply a release from the consequences of such fraud.   p. 361.

2. FRAUD.—*Remedies.*—A person who has been induced by fraud to enter into a contract, may either repudiate the contract *in toto*, return or offer to return whatever of value he has received under it, and recover the property he has parted with, or its value; or he may affirm the contract, keep what property or advantage he has obtained under it, and recover the damages he has sustained by reason of such fraud.   p. 362.

3.  APPEAL.—*Review.*—*Harmless Error.*—*Refusal of Instructions.*— Reversible error cannot be predicated on the refusal of a requested instruction that was fully and properly covered by instructions given.  p. 362.

4.  FRAUD.—*Waiver.*—*Acts Constituting.*—The fact that plaintiff, in an action for damages resulting through fraud, had instituted a former suit to rescind the contract and to obtain a reconveyance of the land, which was thereafter dismissed by him at his own costs, and that he thereafter retained the stock he had received for the land, and continued to act as a director of the corporation, was not inconsistent with his right to affirm the contract and rely on his action for damages.  p. 362.

5.  FRAUD.—*Action.*—*Issues.*—*Instructions.*—In an action to recover damages for fraud perpetrated on plaintiff in the exchange of corporate stock for plaintiff's land, where the complaint alleged that T. and the other defendant conspired to induce plaintiff to believe that T. owned the stock exchanged, that the other would retain his stock and control the business with plaintiff, and that T. in fact owned no stock, but that the stock exchanged was a part of the stock owned by the other defendant, the question of the ownership of the stock was material, so that an instruction stating that it was wholly immaterial who was the owner of such stock, provided plaintiff acquired a good title to same, was properly refused.  p. 362.

6.  FRAUD.—*Statements of Value.*—*Opinion.*—Statements by defendants that they had paid par for their stock in a corporation, made to induce plaintiff to exchange land therefor, were representations as to material, existing facts, and not the mere expression of opinions as to value, and constitute actionable fraud, if they were false and were relied upon by plaintiff to his damage.  p. 364.

7.  FRAUD.—*Statements of Value.*—*Representations by Vendor.*— *Reliance.*—Representations of value by a vendor, who has, or assumes to have, special knowledge of the value of property sold, made as a basis of a contract between the parties, and with knowledge that the vendee is ignorant of the value and is relying on such representations, are binding on the vendor.  p. 364.

8.  EVIDENCE.—*Value.*—*Assessed Value of Corporation.*—*Record of County Board of Review.*—Under §§10233, 10234 Burns 1908, Acts 1903 p. 49, requiring corporations to make out and deliver to the assessor a sworn statement showing the value of all tangible property, and the market value, or if no market value, the actual value of the shares of stock, and providing that such statement shall be laid before the county board of review, it will be presumed, in the absence of a showing to the contrary, that the board of review in fixing the assessment has regarded such state-

ment as true and correct and has fixed the true cash value of the property in accordance with the facts thereby shown, so that the record of such board showing the assessed value of corporate stock, unless made too remotely, is admissible as affording some evidence of its value. p. 365.

9. EVIDENCE.—*Presumptions.—Regularity of Corporate Acts.*—It will be presumed that the officers of a corporation, in preparing a statement of the value of all its tangible property, and of the shares of stock, as required by §10233 Burns 1908, Acts 1903 p. 49, made a true statement. p. 368.

10. NEW TRIAL.—*Misconduct of Juror.*—The fact that a juror, who had instituted an action which was compromised and dismissed before issues were formed, on being asked on his *voir dire* if he had ever had any litigation, answered "no," was not ground for a new trial, since the question was not calculated to call to his mind a case which was only filed and dismissed. p. 369.

From Noble Circuit Court; *Andrew A. Adams,* Special Judge.

Action by Philip Pfaffman against David F. Ohlwine and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Leonard, Rose & Zollars, T. A. Redmond* and *McNagny & McNagny,* for appellants.

*Deahl & Deahl* and *Prickett & Carver,* for appellee.

FELT, P. J.—This is a suit by appellee to recover damages from appellant for alleged fraud in the exchange of a farm for certain stock in the Specialty Case Company, a corporation.

The complaint is in two paragraphs, but the allegations of each are similar, and, in substance, charge that in November, 1907, appellee was the owner of a farm in DeKalb county, of the value of $8,000; that in November, 1907, appellants falsely and fraudulently represented to appellee that appellant Ohlwine was the owner of 178 shares of the capital stock of the Specialty Case Company, of Kendallville, Indiana, of the par value of $8,900, for which he had paid one hundred cents on the dollar, and had purchased said stock from the Specialty Case Company; that appel-

lant, Thomas, was the owner of 128 shares of the capital stock of said company, for which he had paid one hundred cents on the dollar; that said stock was then worth par; that appellants, in order to persuade and induce appellee to purchase said 128 shares of capital stock in said company, further falsely and fraudulently represented to him that the Specialty Case Company was then making money over and above the operating expenses; that if appellee would purchase said 128 shares of stock from appellant, Thomas, appellant, Ohlwine, would retain his 178 shares of stock, and appellee and said Ohlwine would then control the business and make from $10,000 to $15,000 annually; that appellants colluded and conspired together for the purpose of defrauding and cheating appellee out of his said farm; that the statements made to him by appellants as to the ownership of the capital stock alleged to belong to Thomas, as to the actual price paid for the stock and as to the value thereof at said time, were wholly false and untrue, and were made to appellee by appellants for the purpose of deceiving and defrauding him; that appellee had no knowledge of their falsity, and believed all said statements to be true as made by appellants, and he relied on them and purchased, as he then thought, 128 shares of capital stock from appellant, Thomas, and paid therefor the sum of $6,400, being the full par value of said stock; that Thomas did not in fact own any stock in said company, and the stock so purchased was a part of the stock of appellant, Ohlwine; that the stock at the time, viz., November 14, 1907, was worth only thirty-five or forty per cent of its face value, and appellee was thereby defrauded out of $4,000.

Appellants answered the complaint by general denial, and by a paragraph of special answer which set up the facts relating to the trade, and also alleged that appellee had prosecuted a former suit to rescind the contract under which the exchange was made, and to obtain a reconveyance of the land to him; that appellee knew all the facts connected with

said transaction when he instituted the same; that said suit was prosecuted to final judgment against appellee; that he continued to act as a director of the corporation, participated in its business, and had, with full knowledge of all the facts, ratified and confirmed the original transaction; that the facts alleged in the former suit to rescind are substantially the same as those alleged in this suit. To this special answer a reply was filed in general denial. On the issues so formed the cause was submitted to a jury for trial, and thereupon a verdict was returned for appellee in the sum of $2,617. Appellants' motion for a new trial was overruled, and this action of the court is the only error relied on or discussed on appeal.

Appellants complain of the refusal of the court to give instruction No. 22 tendered by them, which, in substance, informed the jury that if with full knowledge of all

1.   the facts of the transaction appellee retained all the proceeds thereof and ratified the same, the "verdict must be for the defendants."

In *Johnson* v. *Culver* (1888), 116 Ind. 278, 285, 19 N. E. 129, the Supreme Court declared the law applicable to the question presented by the refusal of an instruction, as follows: "The retention of property by a party who has suffered loss from the fraud of another does not preclude the loser from maintaining an action for damages, nor does even an express waiver of the fraud and explicit ratification of the contract have the effect to deprive the party of his action, unless, indeed, the ratification is of such a character as to imply a release from the consequences of the fraud. In the case of *St. John* v. *Hendrickson* [1882], 81 Ind. 350, it was said: 'It is undoubtedly the law, that there may be a waiver of a right to recover damages for loss resulting from false and fraudulent representations by an express affirmance. It is essential to such a waiver that the party should possess full knowledge of the fraud practiced upon him; that he should intend to confirm the contract and

abandon all right to recover for the loss resulting from the fraud.' "

Where a person has been induced by fraud to enter into a contract, he has his choice of remedies. He may repudiate the contract *in toto,* return or offer to return whatever of value he has received under it, and recover the property he has parted with or its value; or he may affirm the contract, keep whatever of property or advantage he has obtained under it, and recover the damages he has sustained by reason of the fraud perpetrated on him in the transaction. *Nysewander* v. *Lowman* (1890), 124 Ind. 584, 588, 24 N. E. 355; *Johnson* v. *Culver, supra,* 283; 20 Cyc. 87.

To affirm the contract, retain the actual consideration received under it and ratify the transaction falls short of a ratification with full knowledge of the fraud intending thereby to abandon all right to recover damages sustained on account of such fraud. Furthermore, in instructions Nos. 8 and 12, tendered by appellee and given by the court, the jury was properly instructed on the question of ratification involved in this case under the issues and the evidence.

It appeared from the evidence without dispute that the former suit was dismissed by appellee, at his own costs before the issues were formed and without any trial. The other things alleged to have been done by appellee in relation to the business and property of the corporation were not at all inconsistent with his right to affirm the contract and rely on his action for damages.

Appellants allege error in the refusal of the court to give instruction No. 18 tendered by them, which, in substance, told the jury that it was wholly immaterial who was the owner of the stock transferred to appellee, provided he acquired a good title to the same. It may be conceded that as a general rule the contention of appellants would be correct, but in this case the com-

plaint contained a charge that appellants conspired together to cheat and defraud appellee out of his farm; that they represented that appellant, Thomas, owned the 128 shares of stock he proposed to transfer to appellee for his farm; that, appellant, Ohlwine would not sell his 178 shares of stock if appellee would purchase said 128 shares of Thomas, but would continue to hold his stock and be active in the management of the business of the company, and he and appellee would thereby have control of a majority of the stock of the company, manage its business, and make from $10,000 to $15,000 per year; that appellant, Ohlwine, would not sell any of his stock at any price; that in fact appellant, Thomas, did not own any stock, and the stock transferred to appellee was a part of the 178 shares owned by Ohlwine; that appellee had no knowledge of the business of said company; that he had been acquainted with appellant, Ohlwine, for many years, had confidence in his honesty and in his ability to manage the business of said company; that he relied on said statements, believed them to be true, had no knowledge to the contrary, and but for such representations and his reliance thereon, he would not have executed said contract. The evidence shows that Thomas had no interest in the business of the company, owned no stock, and after obtaining from the appellee a deed for the farm, conveyed the same to appellant, Ohlwine, without any consideration. This and other evidence warranted the inference that Thomas was only a tool of Ohlwine, and that they fraudulently conspired to deceive appellee, and obtain from him his farm for a grossly inadequate consideration. On this state of facts it cannot be said that the ownership of the stock was immaterial, for it was essential to the perpetration of the fraud that appellee be deceived on this point, and be made to believe that Thomas owned the stock he was purchasing, and that Ohlwine would not sell his stock and would continue in the business.

Appellants complain of the giving of instructions Nos.

3, 4 and 5, at the request of appellee, on the ground that the instructions, in effect, told the jury that mere representations as to the price paid for stock amounted to fraud. Appellants assert that representations of the seller that he paid a certain price for an article are only trade talk, on which the purchaser has no right to rely.

The statements that appellants paid par for their stock were representations as to material, existing facts, and not the mere expression of opinions as to value. If the statements were false and appellee did not know them to be false, but relied on them to his damage, actionable fraud is shown. *Grover* v. *Cavanagh.* (1907), 40 Ind. App. 340, 346, 82 N. E. 104; *New* v. *Jackson* (1912), 50 Ind. App. 120, 95 N. E. 328, 331.

6.

If the statements be viewed as representations of value, on the facts of this case, appellants are in no position to complain, for the reason that it is the law that if a vendor has, or assumes to have, special knowledge of the value of the property sold, and the vendee is ignorant of the value, which fact is known to the vendor, who also knows the vendee is relying on his representations as to value, representations of value made under such conditions, as a basis for a contract between the parties, are binding on the vendor. *Judy* v. *Jester* (1913), 53 Ind. App.——, 100 N. E. 15, and cases cited; *Kramer* v. *Williamson* (1893), 135 Ind. 655, 660, 35 N. E. 388.

7.

Furthermore, the instructions complained of are not based entirely on the statement of the price paid for the stock, but connect that representation with the statement that the stock was then worth par, that said statements were false, and appellee was ignorant of their falsity, relied thereon, believed them to be true, and was thereby induced to purchase said stock at par value, to his damage as alleged.

The objection urged to instructions Nos. 6 and 9 given by the court are similar to those already considered, and are not tenable, for the reasons already apparent from this

opinion. Complaint is also made of instructions Nos. 1 and 13 given by the court, but these instructions fairly construed are not open to the objections urged. The instructions taken as a whole are clear and correct statements of the law applicable to the issues and evidence of the case.

Over appellants' objection, the trial court admitted in evidence the record of the county board of review of Noble county, showing the assessed valuation of the property and capital stock of the Specialty Case Company made in 1907. Appellant, Ohlwine, purchased his stock in the company on June 27, 1907, the record of the board of review bore date of July 10, 1907, and the trade with appellee was made on November 18, 1907. The gist of the objection is that the assessment was made by persons not parties to this suit, that it is hearsay evidence, that it does not tend to show the value of the stock at the time of trade, and that the entry does not show on what property of the company the assessment is based. The question presented by this objection is one of importance, and we find no decisions that are conclusive on the proposition involved.

Under the earlier decisions of this court and our Supreme Court it was held that assessment lists of personal property were admissible as evidence to prove ownership, and the amount and kind of property owned by the person assessed at the time of the assessment, but were not competent as original evidence to prove the value of such property for any purpose other than taxation. The assessments were regarded as made for a special purpose, and could not be used to prove value except for such special purpose.

In the case of *Indiana Union Traction Co.* v. *Benadum* (1908), 42 Ind. App. 121, 83 N. E. 261, this court held that under the provisions of the taxation law of 1891, and subsequent acts, the party assessed is required to make oath that his assessment sheet contains a correct list of his per-

sonal property and shows the true cash value of the same; that under this statute assessment sheets become sworn statements of the persons assessed, showing not only ownership, but the cash value of the property listed, and are admissible as tending to show the value of the property.

In the case of *Brotherhood, etc.,* v. *Barton* (1910), 46 Ind. App. 160, 92 N. E. 64, in an action on a benefit certificate providing for a forfeiture if the assured should come to his death by his own improper conduct, it was held that a record kept by the board of health, and required by the state law or by municipal ordinance, showing that the decedent died from a particular disease, is not admissible as tending to show the cause of death. Roby, J., wrote a dissenting opinion in the case, which was concurred in by Hadley, J.

In the case of *Calahan* v. *Dunker* (1912), 51 Ind. App. 436, 99 N. E. 1021, this court recently held that it was error to receive in evidence the record of the assessed value of real estate. In that case reference was made to the decision in the case of *Indiana Union Traction Co.* v. *Benadum, supra,* and to the statutes providing for the assessment of both personal and real property. It was there observed that while the statute had been so changed as to warrant the decision relating to the admissibility of the assessment sheets of personal property, in so far as the assessment of real estate is concerned, the statute had remained practically unchanged, and for that reason this court was bound by the earlier decisions of the Supreme Court, which are cited at length in that opinion. In the assessment of personal property the owner himself determines its value and verifies it by his oath. It is on this ground that the assessment list is held to be evidence of value. In the assessment of real estate the value is fixed primarily by the assessor and ultimately by the board of review.

Under the present, as well as under former statutes the assessor is required to give a memorandum of the assess-

ment to the owner of the real estate, showing the time of meeting of the board of review, but the owner has nothing to do with fixing the value, though he may appear before the board of review and become a witness in his own behalf. In that event his evidence before the board might be competent as an admission, but that fact would not make the record of the assessment evidence of value.

Section 10233 Burns 1908, Acts 1903 p. 49, requires corporations, such as the one involved in this controversy, between March 1 and May 15 of each year, in addition to the ordinary listing of property for taxation, to make out and deliver to the assessor a sworn statement showing the amount of their capital stock and certain other facts.

The fourth subdivision of this section requires the statement to show "the market value, or if no market value, then the actual value of the shares of stock," and the sixth subdivision requires the statement to show "the value of all tangible property." This statement is to be made out by the president or other accounting officer of the corporation, and the assessor is required to return the same to the office of the county auditor, who, at the meeting of the board of review, is required to lay such statement and schedule before that board, and thereupon the board of review, acting on such statement and schedule, and other information, if deemed essential, proceeds to fix the value of the property of the corporation, and the value of the stock, in case the value of the stock exceeds the value of the tangible property. The value so fixed becomes the assessment for taxation, and stands unless changed on appeal. §10300 Burns 1908, Acts 1895 p. 74.

A corporation can act only by and through its officers and agents. Such officers and agents necessarily represent the stockholders. In the assessment of the property and stock of a corporation a statement is required as above indicated. The owner of real estate is not required to make any statement or to determine the value of his land. In the

assessment of personal property the owner verifies the list and value of property returned by him. In the assessment of the property or stock of a corporation, such as the one now under consideration, the list and value is determined primarily by the officer of the corporation designated by the statute. In making this statement he acts for the corporation. The analogy between the assessment of the personal property of an individual or partnership and the assessment of the property or stock of such corporation is so strong as to warrant the conclusion that if one is to be received as some evidence of value, the other is admissible for the same purpose. The board of review acts under oath, and has authority under the statute to fix and determine values for the purpose of taxation. The present law requires the assessment to be made according to the true cash value of the property assessed. Notice of the meeting of the board of review is required to be given, and opportunity is afforded aggrieved property holders to be heard. We cannot presume that the law requiring the verified statement from the officers of a corporation, preliminary to the assessment of its property, intends such statement to be a mere formality or to be disregarded in making the assessment. On the other hand, in the absence of any showing to the contrary, we must presume not only that the statement was honestly made as required by the statute, but

9. that the board in fixing the assessment regarded the statement as true and correct, and fixed the true cash value of the property in accordance with the facts shown by such statement.

In view of the foregoing facts, the record of the assessment of the property of the Specialty Case Company cannot be considered hearsay evidence, nor devoid of probative value. The objection that the record does not show on what property of the company the assessment was based is not tenable. We must presume that the officers of the company made a true statement, as required by the statute, and

that the board acted with due regard to the facts shown in such statement. There is no showing of any kind that rebuts this presumption. The assessment was made near the time of the transactions in question, and is not so remote as to be without probative value. The absence of the particular facts on which the board based its valuation may affect the weight, but not the admissibility of the evidence.

The board of review acts under oath in an official capacity. Its records and procedure are open to the public. The values fixed by it are not conclusive, except for the purposes of taxation when there is no appeal, but in any case where the value of stock in a corporation like the one under consideration is in issue, the record of the assessment regularly made in pursuance of the statute, unless too remote in point of time, is some evidence of value, and proper to be considered, like other competent evidence tending to show value, in determining the ultimate fact of value.

One of the grounds for a new trial is the alleged misconduct of one of the jurors who tried the case. It is charged that the juror on his *voir dire* testified that he had never had any litigation; that after the trial appellants learned that in May, 1909, the juror had brought a suit in the Noble Circuit Court to recover damages for false representations made to him in the sale of a horse.

In a counter affidavit filed by the juror it appears that he in fact had not been a party to any litigated lawsuit, but that in May, 1909, he instituted a suit to recover the purchase price of a horse that had been sold to him, alleging misrepresentation made to him in the sale; that before any issues were formed or any steps taken except the beginning of the suit the case was compromised, settled and dismissed. The examination of the juror, his affidavit and the other facts relating to the trial of the case show that the juror was fair and honest in his statements, had no intention of

misleading appellants, and that he in fact gave true answers to the questions asked him. The examination was formal and not calculated to bring out any fact except an answer that he either had or had not been · party to a lawsuit actually tried and determined in court. The question asked and the answer complained of are as follows: "Ever had any litigation? A. No, sir."

If counsel desired to develop facts from which to determine the advisability of exercising a peremptory challenge, the inquiry should have proceeded further and the questions should have been of a character that would indicate to the mind of a fair and reasonable man the information sought to be obtained. The one question asked was not calculated to bring to the mind of the juror a case that was only filed, never litigated, and settled by the parties out of court. The conduct of the juror as shown by the record affords no cause for a new trial. *Pearcy* v. *Michigan Mut. Life Ins. Co.* (1887), 111 Ind. 59, 12 N. E. 98, 60 Am. Rep. 673; *Johnson* v. *Tyler* (1891), 1 Ind. App. 387, 27 N. E. 643.

Some objections are urged to the admissibility of certain exhibits tending to show the value of the stock in the Specialty Case Company, but the objections urged properly relate to the weight of the testimony and not to its admissibility, and therefore do not merit extended consideration. The damages assessed are not excessive, and evince moderation and conservatism on the part of the jury, rather than a disposition to go to extremes. Other minor questions are discussed, but no reversible error is pointed out. It appears from the record that the case was fairly tried and a correct result reached.

Judgment affirmed.

Adams, J., not participating.

NOTE.—Reported in 100 N. E. 777. See, also, under (1, 4) 20 Cyc. 92; (2) 20 Cyc. 87; (3) 38 Cyc. 1711; (5) 20 Cyc. 127; (6) 20 Cyc. 17; (7) 20 Cyc. 51; (8) 17 Cyc. 308; (10) 29 Cyc. 767. As to action for fraud not being barred by plaintiff's retaining

proceeds, see 18 Am. St. 562. As to the proof necessary in actions for fraud, see 65 Am. Dec. 157. As to extent and scope of examination of jurors in civil actions in contemplation of exercise of the right of challenge, see 109 Am. St. 567. For a discussion of the misrepresentation by the vendor of the price paid for property as actionable deceit, see 8 Ann. Cas. 1062.