MORRIS McKINSTRY *v.* O. R. COLLINS and B. H. LOVELL.

January Term, 1902.

Present: ROWELL, TYLER, MUNSON, START and STAFFORD, JJ.

Opinion filed February 27, 1902.

*Civil liability for assault—Expert testimony—Hypothetical questions—Evidence—Record of deaths—Service of replevin writ—Waiver of objections—Pleading—Inconsistent defenses—Argument of counsel—New trial—Waiver of grounds.*

When, in an action by a husband for an assault upon his pregnant wife which caused the death of the foetus and thereby produced blood poison which resulted in the death of the mother, a physician, who saw the mother shortly after her delivery, testifies that she died of blood poison, and that this disease could be caused by a dead foetus or unskillful handling of the mother by physicians or nurses during childbirth, it is admissible to ask such physician if, assuming, that he arrived within ten minutes after the delivery, the blood poison could have been caused by such handling of the patient, without including in the question the time that elapsed between the beginning of labor and delivery.

The record of a certificate of death made pursuant to the requirements of the statute is a public record, and a certified copy thereof is admissible as presumptive evidence of such facts therein as the attending physician is required by law to certify to, and as are presumably within his personal knowledge including the cause of death.

In an action for an assault, a defendant who has, under the statute, pleaded the general issue and filed notice of special matter in justification, cannot be compelled to elect between such defences, but may stand upon his justification without admitting the assault, and deny the assault without waiving his justification.

In an action against an officer alleged to have been committed in connection with the service of a writ of replevin, the defendant testified that the replevin bond, including the statement of the amount, was, with exception of the signatures, in the hand writing of the attorney for the plaintiff in the replevin suit, and that he had it

with him when he served the replevin writ. The bond was in due
form and signed by the plaintiff in that suit, and by his attorney
as surety. On trial, the replevin writ and bond were produced by
the clerk of the court to which they were returnable. *Held*, that
this evidence was sufficient to send the case to the jury on the
questions whether the officer had taken a legal bond when he
served the replevin writ and whether he returned the writ and
bond to the clerk of the court to which the writ was returnable.

An officer may, before he returns a writ of replevin, complete service
thereof by taking and delivering the property as commanded,
though he has previously delivered a copy of the writ to the de-
fendant therein.

An objection to the return of an officer on a replevin writ on the ground
that it is shown by the copy delivered to the defendant therein,
and not by the original, will not be entertained here when it was
not made below.

The replevin writ commanded the officer to replevy one gray two year
old horse colt; the one taken was a gray two year old gelding colt;
no question was made but that the colt taken was the one intended
to be taken by the writ; the court held, without exception, that a
"gelding colt" was a "horse colt." *Held*, that under these circum-
stances, an offer by the plaintiff, to show that defendant Lovell
knew that the colt taken was not such an one as described in the
writ, was properly excluded.

A statement by defendant's counsel, in argument, to the effect that it
is presumed that the officer serving the replevin writ in a legal
way, was proper, in the absence of a showing that the statement
was not made in connection with a claim that the officer observed
the formal requirements of a valid service.

The plaintiff testified that during his wife's illness occasioned by the
assault, he was obliged to hire certain help. This illness of the
wife was not questioned. Defendant's counsel, in argument, called
the jury's attention to the fact that plaintiff had two hired men who
knew whether the woman was sick or well and had not produced
them as witnesses. *Held*, that it fairly appears that this argu-
ment was upon the question of damages, and, the verdict being for
the defendants, the plaintiff was not harmed by it.

A witness for the plaintiff testified that one of the defendants ad-
mitted the assault to him in the presence of one Clapp. Later in
the trial, and before resting, the plaintiff introduced Clapp as a
witness on another matter. Neither plaintiff nor defendant ques-
tioned him in regard to this admission. Defendant's counsel, in

argument, referred to this matter and reminded the jury that plaintiff did not ask Clapp anything about the defendant's admission. *Held*, that, in the absence of a showing that the testimony Clapp would have given was equally within the knowledge of both parties, error does not appear, though he was equally within the reach of both parties.

The circulation of false reports and fabrications by one party to a suit against the other, which are calculated to create a prejudice against that party and his witnesses, is not ground for a new trial when such reports and fabrications did not come to the knowledge of the jurors.

During a recess of the court while the trial was in progress, one of the jurors, in the presence of plaintiff's counsel, called the defendant Collins out of the lawyer's room at the court house and went away with him. The trial continued several days thereafter without objection on the part of the plaintiff. *Held*, that the plaintiff by proceeding with the trial without objection, waived his right to take advantage of any misconduct of the party or juror in this respect, and that a new trial would not be granted therefor.

CASE for an assault upon the plaintiff's wife. Plea, the general issue, with notice of special matter in justification. Trial by jury at the March Term, 1901, Washington County, *Watson,* J., presiding. Verdict and judgment thereon for the defendants. The plaintiff excepted.

The alleged cause of action arose while the defendant Collins, a deputy sheriff, was attempting to serve a writ of replevin in favor of the defendant Lovell, for a certain colt in this plaintiff's possession. ·

The case was heard with a petition for a new trial brought by the plaintiff to the October Term, 1901, of this court.

*H. C. Shurtleff* and *R. M. Harvey* for the plaintiff.

The testimony of Dr. Widber relative to the cause of the blood poison in Mrs. McKinstry's case should have been rereived. A hypothetical question is not improper because it includes only a part of the facts which the evidence tends to

prove.   Roger's Ex. Test. (1891) 65; *Turnbull* v. *Richardson,* 69 Mich. 413; *State* v. *Doherty,* 72 Vt. 392.

The testimony offered would have made it more probable that the cause of the blood poison given by Dr. Widber was correct.   *Armstrong* v. *Noble,* 55 Vt. 428; *State* v. *Ward,* 61 Vt. 185.

The admission of the record from the town clerk's office was error.   Such a record is never more than *prima facie* evidence of the fact of death, or the date of death so far as to show that it occurred before the filing of the certificate.   The facts recited therein are merely descriptive.   *In Re Wintle,* 9 L. R. Eq. 373.

The return of the officer on the replevin writ could not be shown by the copy.   *Bank* v. *Downer,* 29 Vt. 332.

The replevin bond should have been received in evidence that the jury might examine it.   If the officer had no statutory bond, he had no authority to seize the colt.   *Bennett* v. *Allen,* 30 Vt. 686; *Moors* v. *Parker,* 3 Mass. 310; *Walcott* v. *Mead,* 12 Met. 517; *Hamberger* v. *Seavey,* 165 Mass. 505; *Purple* v. *Purple,* 5 Pick. 226; *Case* v. *Potter,* 5 Gray 27; *Baldwin* v. *Whittier,* 16 Me. 448; *Harriman* v. *Wilkins,* 20 Me. 93; *Garlin* v. *Strickland,* 27 Me. 448; *Kimball* v. *True,* 34 Me. 88; *Briggs* v. *Wiswell,* 56 N. H. 323; *Milliken* v. *Segal & Lunt,* 6 Hill 623; *Morris* v. *Van Voast,* 19 Wend. 283.

It was error to allow the argument in regard to the omission to inquire of Clapp.   He was equally within reach of both parties.   *Scoville* v. *Baldwin,* 27 Conn. 318; *Arbuckle* v. *Templeton,* 65 Vt. 205; *State* v. *Fitzgerald,* 68 Vt. 125; *Whitney* v. *Bank,* 55 Vt. 154; *Wood* v. *Agostines,* 72 Vt. 51.

The petition for a new trial should be granted.   The secret and unexplained communication between the defendant Collins and juror Sibley is sufficient ground.   Thompson & Merriam on Juries, 438, 442, 524; 5 Enc. Pl. & Pr., 605, 609,

615; *Huston* v. *Vail,* 51 Ind. 301; *Martin* v. *Morelock,* 32 Ill. 485; *Brown & McCarver* v. *Vail,* 12 Heiskell (Tenn.) 657; *Davidson* v. *Marlow,* 2 Coldwell (Tenn.) 349; *Saltzman* v. *Telephone Co.,* 125 Cal. 502; *Commonwealth* v. *McCaul,* 1 Va. Cases 271; *Nesmith* v. *Fire Insurance Co.,* 8 Abb. Pr. Rep. 146; *State* v. *Prescott,* 7 N. H. 287; *Commonwealth* v. *Roby,* 12 Pick. 519; *Ryan* v. *Harrow,* 27 Iowa 500; *Oliver* v. *Trustees,* 5 Cow. 283; *Clement* v. *Spear,* 56 Vt. 404.

*J. P. Lamson* and *George W. Wing* for the defendants.

The question asked Dr. Widber as modified by examiner was properly excluded. The exception is not explicit enough to warrant discussion.

The certified copy of the record of the death certificate was admissible. *Derby* v. *Salem,* 30 Vt. 722.

Taking the property and delivering it to the party named in the writ of replevin after the delivery of the copy to the defendant in that suit, was proper. The officer was in possession of the colt as soon as he entered the barn where it was. The legality of the service of the writ and the sufficiency of the bond cannot be attacked in a collateral proceeding. *Machine Co.* v. *Boutelle,* 56 Vt. 570; *Wilder* v. *Stafford,* 30 Vt. 399.

An officer cannot be interfered with when serving process. *State* v. *Buchanan,* 17 Vt. 573; *Darling* v. *Bowen,* 10 Vt. 148.

The argument in regard to Clapp's testimony was proper. Counsel simply said that Clapp was there, yet they did not ask him about the admission to Shatney. *Will of McCabe* v. *Contestants,* 73 Vt. 175; *Seward* v. *Garlin,* 33 Vt. 583; *Beattie* v. *Railroad Co.,* 41 Vt. 275.

The charges alleged to have been circulated against the plaintiff did not reach the ears of the jurymen and could have done no harm.

If there was any misconduct on the part of defendant Collins and the juryman Sibley, the plaintiff waived it by proceed-

ing with the trial. *Whitcher* v. *Peacham,* 52 Vt. 242; *Scott* v. *Moore,* 41 Vt. 205.

START, J. The action is case. The plaintiff seeks to recover damages for an alleged assault upon his wife, which, it is claimed, caused her death. The plaintiff's evidence tended to show, that at the time of the assault, his wife was pregnant; that the alleged injury so affected her health as to make her immediately ill, and to cause the death and decomposition of the child while within the mother, thereby producing *septicaemia,* or blood-poison, from which she died.

The plaintiff improved E. A. Widber, a practicing physician, who testified that he was called to see the plaintiff's wife at the time of childbirth. He described the condition in which he found her, and testified that the child was born before he arrived there; that the mother was suffering from septicaemia; that she eventually died of that disease; that septicaemia, or blood-poisoning, might be caused by several different things or conditions within the mother; that among the possible causes was a dead foetus; and that unskillful handling of the mother by physicians or nurses during childbirth might cause septicaemia. The plaintiff's counsel then asked the witness the following question: "Now, doctor, assuming that you arrived at this place from five to ten minutes after the child was born, and finding the condition that you did, could that septicaemia have been caused by any external handling of the physicians or nurses during childbirth?" The question was excluded and the plaintiff excepted. The examiner then stated that he offered to exclude the hypothesis that this could have been caused by any unskillful handling at the time of childbirth. This was, in effect, an offer to rebut any inference that the septicaemia which the witness found the patient suffering from when he arrived there was caused from any unskillful handling by physicians or nurses at the time of childbirth.

The plaintiff having testified that the witness arrived there from five to ten minutes after the child was born, and the doctor having testified that a dead foetus within the mother and unskillful handling during childbirth were among the possible causes of septicaemia, and it being claimed by the plaintiff that the dead foetus within the mother caused the septicaemia, the plaintiff had a right to show by the doctor that septicaemia could not have set in and developed to the extent found by him when he arrived there, between childbirth and the time of his arrival.    The question was framed with reference to one phase of the doctor's testimony, which, without further testimony, might account for the condition in which the doctor found the patient, without reference to the death or decomposition of the child within the mother, and pointed to that particular phase of the testimony, and was calculated to rebut any inference that the condition found by the doctor was due to unskillful handling at the time of childbirth; and it was error to exclude it.    The fact that the examiner did not include in the question the time that elapsed between the beginning of labor and the birth of the child did not render the question inadmissible.    A hypothetical question is not inadmissible because it includes only a part of the facts which the evidence tends to prove, such omission only affecting the weight to be given to the evidence.    *State* v. *Doherty,* 72 Vt. 392, 48 Atl. 658, 82 Am. St. Rep. 951 ; *Johnson* v. *Castle,* 63 Vt. 452, 21 Atl. 534.

As tending to show that the plaintiff's wife died of pneumonia, the defendants were permitted, subject to the plaintiff's exception, to introduce in evidence a certified copy of the record in the town clerk's office of the certificate of death made by Dr. Wishart, one of her attending physicians during her last illness.    The certificate seems to have been made in conformity to section 7 of No. 56 of the Acts of 1896, which provides, in part, that any physician who has attended a deceased

person during his or her last illness, shall at once fill out and forward to the health officer a certificate giving the date of death, the name, age, sex, and, if a male over fifteen years of age, the occupation of the deceased person, the cause of death, place of birth, place of death, and the names of the parents of the deceased, so far as these facts are ascertainable. It is evident from the source from which the certified copy came, that the certificate was returned by the health officer to the town clerk, as provided by section 8 of the act, and by the clerk, recorded pursuant to the requirements of section 3 of the act, which provides that town and city clerks shall receive, number, and record in the order in which they are received, all certificates of births, marriages and deaths in their respective towns and cities, in the books furnished to them by the secretary of the state board of health, and that each record shall show when it was made. It is clear that the record of a certificate made and recorded in conformity to these provisions of law is a public record, and that a certified copy of such a record is admissible in evidence, and is presumptive evidence of such facts stated therein as the attending physician is, by law, required to certify to, and are presumably within his personal knowledge. 1 Greenleaf on Evidence secs. 483, 484, 493. While the cause of death is more or less uncertain, it would seem, in the absence of a post-mortem examination, that an attending physician would be more likely to have personal knowledge of the cause of death than any other person, and that his certificate of the cause of death should be regarded as a statement of a fact within his personal knowledge, and therefore within the rule above stated. In *Derby* v. *Salem*, 30 Vt. 722, it was held that a certified copy of a record of the birth of children, made by the town clerk from information received from the mother of the children, was admissible in evidence. It being the official duty of the town clerk to make such a record, a

duly authenticated copy of it was, *prima facie,* admissible as evidence of the facts which it embodied. In 9 Am. & Eng. Enc. of Law (2d Ed.), 880, it is said that documents of a public nature and of public authority are generally admissible in evidence, although their authenticity is not confirmed by the usual test of truth,—the obligations of an oath, and the power of cross-examination. In Stevens' Digest of the Law of Evidence, 80, it is said that an entry in any record, official book, or register kept in any of Her Majesty's dominions, or at sea, or in any foreign country, stating, for the purpose of being referred to by the public, a fact in issue or relevant or deemed to be relevant thereto, and made in proper time by any person in the discharge of any duty imposed upon him by the law of the place in which such record, book, or register is kept, is itself deemed to be a relevant fact.

The plaintiff offered in evidence the bond taken to the defendant in the replevin suit, for the purpose of showing by the bond itself that defendant Collins did not have the statutory bond at the time he served the writ. We have not been furnished with a copy of the bond, nor has the bond been produced before us. We have nothing from which we can determine whether the bond tended to prove the facts sought to be shown by it, and for this reason, this exception is not considered.

At the close of the evidence, the plaintiff's counsel stated that the defendants stood on two inconsistent defences, namely, that they did not assault the plaintiff's wife, and, if they did touch her, they did no more than was necessary to enable defendant Collins to serve the replevin writ; and counsel requested that the defendants be made to elect on which defence they would proceed. This request was refused, to which the plaintiff excepted. The plaintiff also excepted to the submitting of these so-called inconsistent defences to the jury. These exceptions are not sustained. It is stated in the exceptions

that the defendant's plea was the general issue, with notice of special matter in justification. V. S. 1149 provides that the defendant in an action may plead the general issue, and, upon the trial of the cause on such general plea, may give special matter in evidence in his defence or justification, according to the nature of the action, by giving notice in writing, with the plea, of the special matter upon which he will rely in such defence or justification; and no special matter shall be allowed in evidence except such as is particularly mentioned in such notice in writing. The defendants having pleaded the general issue and given notice of special matter in justification, under this statute, it was incumbent on the plaintiff to show that the defendants assaulted his wife; and the defendants could give evidence in justification of the claimed assault, without thereby proving that they made the assault. They could also give evidence tending to show that they did not make the assault, without thereby disproving their justification. Therefore, the pleadings and evidence did not present a case in which an election of defences could be compelled. The burden was still on the plaintiff to prove the assault, and this issue was for the jury; and the defendants had done nothing to disentitle them to go to the jury on the issue of justification. *Child & Benton* v. *Allen,* 33 Vt. 476; *Grash* v. *Sater,* 6 Iowa 302; *Dye* v. *Leatherdale,* 3 Wils. 20. In 1 Ency. Pl. & Pr. 857, it is said that two or more defences are held to be inconsistent only when the proof of one necessarily disproves the other; and, on page 858 of the same volume, authorities are cited in support of the rule, that in actions for assault and battery, a positive denial of the trespass is not waived by a subsequent plea of justification in the same answer. In *Rhine* v. *Montgomery,* 50 Mo. 566, it is held that defences in an action for an unlawful battery, consisting of a general denial of the alleged trespass and of justification of the defendant's acts, do not admit that the acts

of the defendant were unlawful, and are not, therefore, incon-
sistent, either at common law or under the Missouri statute.

At the close of the evidence, the plaintiff claimed that the
justification had not been made out, and requested the court
to take the question from the jury, for that: First, it did not
appear that before the attempted service of the writ, Sheriff
Collins had taken such a bond from the plaintiff in the replevin
suit as the statute requires; second, that defendant Collins
completed service of the writ before seizing the colt and com-
mitting the assault, if one was committed, and that what was
done after he completed his service he did without authority;
third, that the testimony did not show that the writ and bond
had been returned by defendant Collins to the clerk of the court
to which the writ was returnable.    To the refusal to grant this
request, and to the submitting of the question of justification
to the jury, the plaintiff excepted.    It is stated in the excep-
tions that defendant Collins, while being examined by the
plaintiff's counsel, on being shown the bond in the replevin
suit, testified that the bond, including the words "one hundred
and fifty dollars," was, with the exception of the signature,
in the handwriting of J. P. Lamson, attorney for the plaintiff
in that suit, and that he had the bond with him at the time he
served the replevin writ, but did not know when the bond was
written.    It is also stated in the bill of exceptions, that the
bond shows on its face that it is a replevin bond in due form
for the sum of one hundred and fifty dollars, signed by B. H.
Lovell, as principal, and J. P. Lamson, as surety; and that the
writ and bond were produced on trial by the clerk of the court.
It is considered that these facts tended to show that defendant
Collins had a bond to the defendant in the replevin suit when
he served the writ, and that the writ and bond were returned
to the clerk of the court to which the writ was returnable.    The
testimony of defendant Collins tended to show, that, while

within the barn where the colt was kept, he agreed with the
plaintiff upon the value of the colt, made his returns on the
original writ and copy, handed the copy to the defendant in the
replevin suit, and delivered the colt to Lovell, the plaintiff in
the replevin suit.   At the time Collins took the colt and turned
it over to Lovell, he had not returned the original writ; and he
could complete the service of it by taking and delivering the
property as commanded by the writ, notwithstanding he had
delivered a copy of the writ to the defendant named therein.
It is, therefore, considered that the issue of justification was
for the jury.          ,

The defendants offered in evidence the officer's return on
the copy of the replevin writ which Collins delivered to the
plaintiff.   The plaintiff thereupon renewed his general objec-
tion theretofore made, to any testimony tending to show justi-
fication.   The objection was overruled, and the plaintiff ex-
cepted.   The plaintiff now insists that the return could not
be shown by the copy delivered to the defendant in the replevin
suit.   It is stated in the exceptions that no objection was made
to the evidence because it was a copy.   The objection now
urged being made in this court for the first time will not be
entertained.

The plaintiff's counsel, while cross-examining defendant
Lovell, offered to show that the witness knew, when he first
saw the colt after the alleged assault, that it was not such a
colt as is described in the replevin writ.   The offer was ex-
cluded, and the plaintiff excepted.   The replevin writ com-
manded the officer to replevy one gray two-year old horse colt.
The evidence tended to show that the colt taken was a gray
two-year old gelding colt.   It does not appear that any ques-
tion was made on the trial but that the colt taken by the defend-
ants was the one in controversy, and the one intended to be de-
scribed in the writ.   The offer was not to show that the colt

taken was another or different colt from the one mentioned in the writ, and there is nothing in the case that tends to show that the fact that the witness knew that the colt was described in the writ as a "horse colt," instead of being described as a "gelding colt," was material to any issue in the case. The court held that a gelding colt is a horse colt, and to this no exception was taken. Under this holding, the evidence was immaterial; but, irrespective of this, we think the plaintiff was not in any way prejudiced by the exclusion of the offer.

The defendants' counsel, in the course of his argument to the jury, stated that in the service of the replevin writ, it is presumed that Sheriff Collins did it in a legal way. To this the plaintiff excepted. If the statement was made in connection with a claim that Collins observed the formal requirements for a valid service of the writ, it cannot be regarded as an erroneous statement of the law. It not appearing that it was not so made, error does not appear. The contrary not appearing, there is often a presumption in favor of the regularity of an officer's proceedings. *Jewett* v. *Guyer,* 38 Vt. 209; *Fairbanks* v. *Benjamin,* 50 Vt. 99; *State* v. *Potter,* 52 Vt. 38; *Drake* v. *Mooney,* 31 Vt. 617, 76 Am. Dec. 145; *Collins* v. *Perkins,* 31 Vt. 634; *Hartwell* v. *Root,* 19 John. 345, 10 Am. Dec. 232.

The plaintiff testified, that during his wife's illness, he was obliged to hire help and did employ two men who were there during the day. The defendants' counsel, in argument, said, in substance, that the plaintiff had two hired men. They knew whether she was sick or well. Why did they not call them? To this the plaintiff excepted. We think it fairly appears that this argument was upon the question of damages; the verdict being for the defendants, the plaintiff was not harmed by it. The plaintiff's testimony, to the effect that he had to hire help during his wife's illness, bore upon the question

of damages. No question was made but that the plaintiff's wife was sick during the whole time claimed by him. The counsel making the statement claims that it was made when he was arguing the question of damages, and the judge presiding at the trial is of that opinion.

The plaintiff called one Shatney, who testified, that, on an occasion when he was in a lumber camp, defendant Lovell told him that the plaintiff's wife was assaulted by himself and defendant Collins; and that, among others present on that occasion, was one Fred Clapp. Later, and before the plaintiff rested his case, the plaintiff called Clapp, and examined him on another and independent matter. He was not asked by either party about the occasion testified to by Shatney. Lovell denies having any such conversation. The defendants' counsel, in argument, in referring to the testimony of Shatney, said Clapp was right there, and they did not ask him anything on that point. To this remark the plaintiff excepted. The witness, being in court, was equally within the reach of both parties, but it does not appear that the testimony he would give was equally within the knowledge of both parties. Therefore, error does not appear. Shatney and Clapp were improved as witnesses by the plaintiff, and the plaintiff had the opportunity to find out what each would testify to before improving them as witnesses. It does not appear that the defendants had such opportunity. It does not appear, except from the testimony of Shatney, that Lovell ever saw either of the witnesses until they took the witness-stand. Lovell denied that he had the conversation testified to by Shatney; and, if in this he was truthful, he knew, if Clapp was asked in regard to the occasion, and told the truth, he would say that he did not hear the conversation. But it does not appear that the defendants had an opportunity, before Clapp took the witness stand, to find out whether he would tell the truth. It is therefore considered, that it does

not appear that the testimony was not peculiarly withing the knowledge of the plaintiff. A verdict will not be set aside in this court because counsel, in argument, claim that an inference unfavorable to a party should be drawn from the non-production of testimony, unless it appears that the testimony was not within the peculiar knowledge of the excepting party. *In Re Will of McCabe,* 73 Vt. 175, 50 Atl. 804; *State* v. *Smith,* 71 Vt. 331, 45 Atl. 219. The case of *Arbuckle* v. *Templeton,* 65 Vt. 205, 25 Atl. 1095, relied upon by the plaintiff's counsel, is only to the effect that the non-production of testimony by a defendant is not substantive evidence for the plaintiff, and does not relieve the plaintiff from the burden of proving his case. It is not held in that case, that, when a *prima facie* case is made out, an inference unfavorable to the opposing party cannot be drawn from the non-production of testimony peculiarly within his knowledge.

*Judgment reversed and cause remanded.*

---

In the petition for a new trial, it is alleged that the defendants' counsel circulated reports, stories and fabrications about the plaintiff and his witnesses, and thereby polluted and poisoned public opinion, and prejudiced the jury against the plaintiff and his witnesses. If such reports and stories were circulated by the defendants' counsel, they did not come to the knowledge of the jurors, as is shown by their testimony and the concession of the petitioner; and the petitioner was not thereby prejudiced.

It is also alleged in the petition that defendant Collins communicated with one of the jurors in such a manner as to prejudice the juror in his favor. The only evidence tending to support this allegation is the testimony of one of the plaintiff's counsel and two others, which tends to show,

11

that, during the trial, while the plaintiff's counsel and others were in the attorneys' room at the court house, the juror came to the door and called for defendant Collins, and that the juror and Collins went away together. The plaintiff's counsel did not bring this matter to the attention of the trial court, but proceeded with the trial, which lasted several days, making no objection to the conduct of the party and juror until the bringing of this petition. By so doing, he elected to go on with the trial, knowing all the facts that are now known, constituting the alleged improper conduct; and the plaintiff is deemed to have so elected. He is chargeable with knowledge of the conduct that was exhibited in the presence of his counsel, and has waived the right to now take advantage of the alleged misconduct. Under these circumstances, the court, in the exercise of its discretion, will not grant a new trial. *Scott* v. *Moore,* 41 Vt. 205, 98 Am. Dec. 581; *Badger* v. *State,* 69 Vt. 217, 37 Atl. 286; *Whitcher* v. *Peacham,* 52 Vt. 242.

*Petition dismissed, with costs.*