458            SUPREME COURT OF UTAH            [July,

Bozicevich v. Kenilworth Merc. Co., 58 Utah 458

## BOZICEVICH v. KENILWORTH MERCANTILE CO.

No. 3518.   Decided June 7, 1921.   Rehearing Denied July 20, 1921.
(199 Pac. 409.)

1.  EVIDENCE—DEATH CERTIFICATE RECORD ADMISSIBLE AS TO CAUSE.
    A certificate of death being in the form prescribed by Comp.
    Laws 1917, § 5045, and recorded as required by statute, a certi-
    fied copy of the record, declared by section 5058 prima facie
    evidence in all courts and places of the facts therein stated, is
    admissible in an action for death as to the cause thereof.

2.  WITNESSES—DEATH CERTIFICATE NOT INADMISSIBLE AS PRIVILEGED
    COMMUNICATION.   Comp. Laws 1917, § 5058, rendering record of
    attending physician's death certificate prima facie evidence of
    cause of death, does not contravene section 7123, subd. 4, pro-
    hibiting a physician without consent of his patient testifying in
    a civil action as to information acquired in attending the
    patient; and if it did, being part of a later act, it would pre-
    vail.

3.  EVIDENCE—STATEMENT IN CERTIFICATE OF CAUSE OF DEATH ONE
    OF FACT.   The statement in an attending physician's death cer-
    tificate—required by Comp. Laws 1917, § 5045, to state the
    cause of death, including the primary and immediate causes
    —of what produced ptomaine poisoning causing death, is a
    statement of fact, within section 5058, making the record of the
    certificate prima facie evidence of all facts therein stated.

4.  TRIAL—GIVING REQUESTED INSTRUCTIONS COVERED BY GENERAL
    CHARGE NOT NECESSARY.   Requested instructions fully covered by
    the general charge need not be given.

### On Rehearing.

5.  HEALTH—STATUTE AS TO DEATH CERTIFICATE WITHIN POLICE
    POWER.   Comp. Laws 1917, § 5045, requiring death certificate by
    attending physician to state, among other things, the immediate
    and the primary and contributing causes of death, and section
    5058, making the record thereof prima facie evidence of the
    facts therein stated, is within the police power.

GIDEON and WEBER, JJ., dissenting.

Appeal from District Court, Third District, Salt Lake
County; *W. H. Bramel,* Judge.

Action by Lucas Bozicevich against the Kenilworth Mercantile Company. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Jos. W. Rozzelle*, of Salt Lake City, for appellant.

*Wasson & Fisher*, of Salt Lake City, for respondent.

FRICK, J.

This action was originally commenced by the plaintiff, hereinafter called appellant, against the Independent Coal & Coke Company, the Crescent Ice Cream Company, and the Kenilworth Mercantile Company, all corporations. The action as to the first two defendants was dismissed in the lower court, and the Kenilworth Company, hereinafter called réspondent, is the only party defendant in the case and the only one defending in this court.

The appellant brought the action to recover damages for the death of his minor child, a boy six years of age, whose death, it is alleged, was caused from eating unwholesome and poisonous ice cream which was sold and delivered by respondent to appellant and which resulted in ptomaine poisoning which caused the child's death. The respondent denied the alleged unwholesomeness and poisonous character of the ice cream and that the child's death was caused from eating the same. A trial to a jury resulted in a verdict in favor of the respondent. Judgment was duly entered on the verdict. From that judgment this appeal is prosecuted.

While appellant's counsel has assigned a number of errors, yet the one that is principally relied on arose as follows: At the trial, after appellant had presented his case, the respondent called the physician who attended the deceased child during its last illness. After the doctor had qualified himself under the statute to testify, he was asked whether there had been any other cases of ptomaine poisoning in the vicinity

where the child lived on or about the time the child was suffering from ptomaine poisoning and whether he had attended the child during its last illness. The doctor answered that he attended the child at the time inquired about, and that as far as he knew there were no other cases of ptomaine poisoning in the vicinity at that time. Counsel for respondent then said that he felt some delicacy in asking the doctor further questions in view of our statutory provisions which make the attending physician's testimony without the consent of his patient incompetent, and asked counsel for appellant whether he insisted upon his statutory rights. Appellant's counsel answered by stating that he wanted the examination "kept within the statutory limits." Respondent's counsel then desisted from asking the doctor further questions relative to the child's illness or condition, but asked him whether he had made and signed a death certificate after the child had died, which the doctor answered in the affirmative. Counsel then asked the dctor this question: "In signing that death certificate you gave your very best judgment as to the cause of death?" The question was objected to by appellant's counsel, and the objection was sustained. No further matters of substance were elicited from the doctor by respondent's counsel. Appellant's counsel then proceeded to cross-examine the doctor with regard to some matters, after which respondent's counsel offered in evidence the death certificate after the same was identified, which the attending physician had made, signed, and filed in pursuance of and as required by our statute. The certificate was objected to by appellant's counsel, but the court overruled the objection and admitted the certificate in evidence. Appellant's counsel excepted to the ruling, and now strenuously insists that the court erred in admitting in evidence the death certificate, and that the error was prejudicial to appellant's rights.

Did the court err in admitting the death certificate?

A majority of this court is of the opinion that no error was committed in admitting the death certificate in evidence. We think the ruling is sustained not only by our statute, to which we shall refer later, but also by the rule prevailing at com-

mon law. Comp. Laws Utah 1917, § 5838, adopts the common
law of England ''so far as it is not repugnant to  *   *   *
the Constitution and laws of this state.'' The records of
births, deaths, and marriages, when properly kept as required
by law, have, from time immemorial, been recognized as pub-
lic records, and, as such, were admissible in evidence for cer-
tain purposes. The law in that regard is well stated in 3
Jones, Comm. Ev., § 508. The author quotes the following
from Stephen on Evidence:

"An entry in any record, official book, or register kept in any
state, or at sea, or in any foreign country, stating, for the purpose
of being referred to by the public, a fact in issue or relevant, or
deemed to be relevant thereto, and made in proper time by any
person in the discharge of any duty imposed upon him by the law
of the place in which such record, book, or register is kept, is
itself deemed to be a relevant fact."

The author then proceeds as follows:

"And the law here is practically the same. The cases are
numerous that the entries are competent evidence where the nature
of the office seems to require them and whether the duty to make
them is enjoined by statute or by a superior officer in the per-
formance of his duty. So long as the one making them was in
discharge of a public and official duty in so keeping the book of
entry, it is sufficient. Such entries are generally made by those
who can have no motive to suppress the truth or to fabricate testi-
mony. Moreover, in many cases they are made in the discharge
of duty, pursuant to an oath of office. In his work on Evidence,
Taylor mentions a large number of books of this character which
the law recognizes as official registers; for example, among others,
parish registers, registers of births, marriages, and deaths, made
pursuant to the registration acts, land tax assessments, bishops'
registers, books kept at public prisons, official logbooks, books kept
by the coast guard showing the state of wind and weather, regis-
ters of parliamentary votes, customhouse revenue books, and books
of other public offices."

The author further states that at common law such records
''were admissible'' if it ''be shown that they were required
by law as kept for public benefit,'' and continues further:

"In the United States somewhat greater latitude seems to have
been allowed; and it has frequently been held that such entries
are admissible if made in the course of official duty, although not
required to be made by law."

In speaking of the probative effect of such records, it is said:

"Although such records are admissible, they do not in general import absolute verity, but are treated as prima facie evidence of the facts entered and of the documents recorded."

See 3 Jones, Comm. Ev., §§ 508, 509, 511.

Mr. Wigmore, in his unexcelled work on Evidence (volume 3, §§ 1642 to 1646, inclusive), clearly states the reasons why and the purposes for which such records are admissible as evidence of the facts stated therein.

The contents of such records have therefore been received as prima facie evidence for at least several centuries.

The Legislature of this state has, however, not only adopted the common law, but has extended the same respecting the registering or recording of births and deaths, and has enacted special provisions with respect to when, how, and for what purpose certified copies of such records shall be admissible as prima facie evidence of the facts therein stated. Comp. Laws Utah 1917, § 5045, provides that a death certificate shall be made and signed by the attending physician, and, after providing for certain matters to be stated therein, it is provided that the physician—

"shall further state the cause of death so as to show the course of disease or sequence of causes resulting in death, giving the primary and immediate causes, and also the contributory causes, if any, and the duration of each. Indefinite and unsatisfactory terms indicating only symptoms of disease or conditions resulting from disease will not be held sufficient. * * * "

That section also provides a specific form of death certificate indicating each particular fact or matter that must be stated therein. In order to compel prompt and truthful statements on the part of the physician, section 5059 provides for penalties for a failure to make a certificate or for making incorrect statements therein respecting the cause of death or the other things required to be stated by the physician. Penalties are also provided for the failure of the registrar to comply with the provisions of the statute. The statute also provides:

"The state registrar shall, upon request, furnish any applicant

a certified copy of the record of any birth or death registered under provisions of this title. * * * And any such copy of the record of a birth or death, when properly certified by the state registrar to be a true copy thereof, shall be prima facie evidence in all courts and places of the facts therein stated." Section 5958.

Every precaution is taken to obtain a correct statement of the cause of death and that the physician's certificate shall be properly recorded. The purpose of the statute, therefore, is to obtain and to record the true, the real, cause of death. We can conceive of no method or plan whereby greater certainty respecting the true cause of death could be attained. Moreover, if the plaintiff, in a case like the one at bar, is not satisfied with the statement contained in the certificate of death, he may always contradict the record by any proper evidence. Again, he may always call the attending physician and have him explain, if explanation be deemed necessary. If, therefore, appellant in this case desired to establish the true cause rather than a particular cause of death, the method pointed out by the statute is much more likely to establish the true cause than any other conceivable method. It is inconceivable to the writer that a physician should falsely state the facts respecting the cause of death, and hence there is not a single valid reason why the certificate should not be admitted, at least as prima facie evidence of the facts therein stated. It is true that the physician may be mistaken, but that is always possible, it matters not in what form his statements are received. Nor can there be any question respecting the matters that, under the statute, constitute prima facie evidence. The form of the certificate is made a part of the act itself, and therefore must be followed. There is also provision made that in case the certificate is incomplete or incorrect in any particular the physician may be required to complete or correct it before registration. If, therefore, a certificate conforms to the statute, and is properly certified, there is no room for judicial construction or interpretation respecting its meaning nor to what extent it consitutes prima facie evidence.

The question, however, still remains whether the admission of the facts stated in such a certificate as prima facie evidence

contravenes Comp. Laws Utah 1917, § 7123, subd. 4, which provides:

"A physician or surgeon cannot, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

Under the common law, the physician was required to testify respecting his knowledge of all facts relevant and material to any controversy if he was called as a witness, whether for or against the patient. Under the foregoing statute, however, which abrogated the common law, a physician may not testify to the things prohibited by the statute without the consent of his patient. The privilege, however, belongs to the patient, and to him alone. In view that the privilege is merely statutory, however, the Legislature may at any time modify the privilege, or, if in its wisdom it would be for the best interests of the public, it can withhold the privilege altogether. The right is therefore merely statutory, and is subject to change at any time at the will of the Legislature. The privilege in its present form has been in force in this state at least since 1884. See Laws Utah 1884, p. 359. It was in force in a modified form prior to that time. See Comp. Laws Utah 1876, p. 506. Upon the other hand, the act requiring physicians to make certificates of births and deaths in their present form, and requiring the registration of such certificates, and the making of the contents of certified copies thereof prima facie evidence, has been in force only since 1905. See chapter 120, Laws Utah 1905. If, therefore, there is an irreconcilable repugnance or conflict between the act creating the privilege and the provisions of the act making a certified copy of the physician's certificate prima facie evidence of the facts therein stated, the latter act, under elementary rules of construction, must prevail. As we view the matter, however, there is no irreconcilable conflict, and both provisions may stand and be enforced.

Be that as it may, however, there can be no doubt that the patient may still insist upon his privilege; and the physician may not, without the patient's consent, testify to information that may mave been imparted to him by the patient or such

information as the physician may have received in attending the patient, if such information was necessary to enable the physician to prescribe or act for the patient. When death has overtaken the patient, however, and it becomes necessary for the public good that the cause of his death be made known, and that a public record may be made thereof, then the privilege, to that extent, if it ever existed as against such a certificate, must yield to the public good. In the case at bar the Legislature has therefore not encroached upon any vested right of the plaintiff, and has in no way taken anything from him. Moreover, in this case the very purpose of plaintiff's complaint is to make known what caused the death of his child. The only difficulty seems to be that the plaintiff desires to establish a particular cause of death. If, however, the cause of the death of his child had not already been made a matter of record, the plaintiff, in bringing this action, is making it as public as it can be made in an ordinary lawsuit. True, he is not satisfied with the cause of death as stated in the physician's certificate, and, as a matter of law, he is not bound to be. In view, however, that in the public interest the cause of his child's death has been made a matter of public record and such record has been declared to be prima facie evidence respecting the cause of death, the plaintiff is as much bound by the record and by the statements contained therein as any other member of the public who may be interested, either directly or indirectly, in the cause of his child's death. In view of the common-law rule before referred to, and in view of the statute, which is merely a matter of police regulation the wisdom of which is not a judicial question, we can see no escape from the conclusion that the death certificate produced by the defendant in this case was admissible as prima facie evidence of the facts therein stated. When it is kept in mind that no one longer questions the right of the Legislature to declare the facts recited in tax deeds, in tax records, in the state engineer's certificates respecting water locations, and in records respecting the defective condition of mines, when made a matter of public record, as prima facie evidence of the facts therein recited, it seems almost like an attempt to

overthrow long and well-established rules to now hold that under a statute like ours certified copies of death certificates may not be considered as prima facie evidence of the facts therein stated. To that effect is also the great weight of authority. See *National Council, etc.,* v. *O'Brien,* 112 Ill. App. 40; *State* v. *Pabst,* 139 Wis. 561, 121 N. W. 351; *McKinstry* v. *Collins,* 74 Vt. 147, 52 Atl. 438; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699-706, 52 Atl. 490; *Krapp* v. *Metropolitan Life Ins. Co.,* 143 Mich. 369, 106 N. W. 1107, 114 Am. St. Rep. 651; *Ohmeyer* v. *Supreme Forest, Woodmen Circle,* 91 Mo. App. 189; *Andricus' Adm'r* v. *Pineville Coal Co.,* 121 Ky. 724, 90 S. W. 233; *Keefe* v. *Supreme Council, etc.,* 37 App. Div. 276, 55 N. Y. Supp. 827, and *Woolsey* v. *Trustees, etc.,* 84 Hun, 236, 32 N. Y. Supp. 543. In many of the foregoing cases certified copies stating the cause of death were admitted upon the sole ground that the original constituted public records and were admissible as such, while in others the decisions are based upon the statute making such records prima facie evidence. The questions involved are well considered in many of the cases cited. The question is also considered in those cases where, under a statute like ours which prohibits the physician from testifying without his patient's consent, whether such a statute excludes death certificates and prevents them from being admitted as prima facie evidence. In all of the foregoing cases where the question was passed on it was held that such a statute does not affect the right to consider such certificates as prima facie evidence of the facts therein stated.

In *National Council, etc.,* v. *O'Brien,* supra, the decision is correctly reflected in the third headnote, where it is said:

"A death certificate which purports to show of what disease a particular person died is competent as tending to prove the death of such person from such cause, where it is produced from among public records kept pursuant to statute."

Our statute seems to have been copied largely from the Illinois statute, and the provision respecting the probative effect of death certificates is precisely like the Illinois statute. The Illinois case was decided before our statute was adopted. The Illinois statute has been in force ever since July, 1877.

In *Krapp* v. *Metropolitan Life Ins. Co.*, supra, the Supreme Court of Michigan reviews the New York case of *Davis* v. *Supreme Lodge Knights of Honor*, 165 N. Y. 159, 58 N. E. 891, hereinafter referred to, and holds that that case is not controlling upon the question here involved.

In the case of *McKinstry* v. *Collins*, supra, the law is stated thus:

"The record of a certificate of death made pursuant to the requirements of the statutes is a public record, and a certified copy thereof is admissible as presumptive evidence of such facts therein as the attending physician is required by law to certify to, and as are presumably within his personal knowledge including the cause of death."

There are some cases, however, which hold a contrary doctrine. See *Beglin* v. *Metropolitan Life Ins. Co.*, 173 N. Y. 374, 66 N. E. 102; *Davis* v. *Supreme Lodge, Knights of Honor*, 165 N. Y. 159, 58 N. E. 891; *Brotherhood, etc.*, v. *Barton*, 46 Ind. App. 160, 92 N. E. 64; and *Sovereign Camp, W. O. W.*, v. *Grandon*, 64 Neb. 39, 89 N. W. 448.

In *Beglin* v. *Metropolitan Life Ins. Co.*, supra, the court, after stating various grounds upon which certified copies of birth and death records may be admitted as prima facie evidence, says:

"We think it was not the intention of the Legislature to change the common-law rule of evidence in controversies of private parties *growing out of contract, and that the provisions of the statute should not be construed as applicable to such cases.*" (Italics ours.)

We confess our inability to grasp just what the writer of the opinion had in mind. The fact is that no reason whatever is stated why the Legislature did not mean what it said in plain and unambiguous language, namely that certified copies of death certificates should be "prima facie evidence in all courts and places." Merely to say "we think" that the Legislature did not intend a certain thing is not at all convincing to our minds, and especially not when considered in the light of all that is said in the statute and when its very purpose is kept in mind. But we are equally in the dark with regard to what the court means by controversies "growing out of

contract." True it is that, when the court's language is considered in the light of what is said in the earlier New York case, namely, *Davis* v. *Supreme Lodge, etc.,* supra, and upon which the decision in the Beglin Case seems to be based, we assume that the court had in mind some limitation, since in the Davis Case, in holding such a certificate not admissible as prima facie evidence of the cause of the death, it is said:

"Legislation which effects unreasonable changes in the rules of evidence for the enforcement of *subsisting contracts*, impairs their obligation, and is therefore void." (Italics ours.)

If, therefore the court means to be understood as holding that provisions affecting contracts that were entered into before the statute authorizing the admission of certified copies of death certificates was enacted are excepted, we can understand the ground upon which the court rests its decision. In view of all that is said in the opinion, however, we are forced to say that we are not clear upon what ground the decision is based.

There are a few cases emanating from the Supreme Court of New York to the same effect, but, as that court has frequently held both ways upon the question, we need not refer to the New York cases further.

It is true that in the case just cited, and in perhaps one or two others cited on behalf of appellant, the court takes the position that the registration act was not intended to "interfere with private rights." It is hard for us to understand how the admission of a public record as prima facie evidence interferes with any private rights. No one has a vested right in the rules of evidence. It might, with as much force, be urged that the grant of the privilege to the patient as against his physician and his adversary interferes with the private rights of such adversary in a lawsuit. The fact, however, is that the Legislature may, and in many instances has, declared when and under what circumstances public records may become prima facie evidence between litigants. We are utterly unable to conceive why that may not be done in a case of this kind. That it may be done seems to be conceded by all courts except the New York Court of Appeals, which seems to hold

that it may not be done as against existing contracts.

Of what use the statute would be if limited as indicated by the Indiana Court of Appeals is also a mystery to us. Clearly, as against the physician or the registrar, if either fails to comply with the provisions of the statute, the record, independently of the statute, would be evidence against them. If the physician had failed to file a complete certificate, then the one he did file would always be admissible against him as his own declaration or statement of what he had done or had failed to do in that regard. If, upon the other hand, the registrar had failed to correctly record the physician's certificate, then again what he did in that regard would be established by the record he made; and, if no record at all was made, then the section which makes the record prima facie evidence would have no application. That the statute would be practically impotent if it were limited as indicated by the Indiana Court of Appeals is, prima facie at least, established by the fact that in all the years that such statutes have been in force not a single case, so far as we are advised, has ever come into the courts in which only the public was concerned. Moreover, the statute makes the record available to "any applicant," and on his behalf, therefore, is "prima facie evidence in all courts and all places." That is what the Legislature has said, and we cannot understand upon what ground the courts can rightfully interfere with the legislative will.

The Indiana decision is, however, much weakened as an authority by reason of the very strong and logical dissenting opinion in which the law in effect is stated to be as we have attempted to outline it in this opinion. Then again the Indiana case cites and relies upon an earlier Wisconsin case which has been overruled.

The Nebraska case of *Sovereign Camp, etc.,* v. *Grandon,* supra, is not an authority either way. In that case it was merely held that a record created by a city ordinance is not a public record, and hence is not admissible in evidence as such.

It is, however, insisted that the physician's statement respecting what produced the ptomaine poisoning is not a state-

470        SUPREME COURT OF UTAH        [July

Bozicevich v. Kenilworth Merc. Co., 58 Utah 458

ment of fact, but a mere conclusion. As we have pointed out, it is one of the very things that the statute requires to be stated by the physician who certifies to the death, and which, by the same statute, is declared to be admissible as prima facie evidence of the facts stated by the physician. The statement, however, respecting the cause of the ptomaine poisoning is necessarily a statement of an ultimate or operative fact. In one sense every fact which an expert may state as a result of special learning, skill, and experience is a conclusion, precisely as every ultimate fact in one sense is a conclusion from other facts. An expert, when called to testify as such, of necessity testifies to ultimate facts which he has deduced from other facts by reason of his expert knowledge and experience. Moreover, in the case at bar what caused the ptomaine poisoning was the very fact the plaintiff sought to establish. That fact, in the very nature of things was the subject of expert knowledge, and hence of expert testimony. How could a mere layman, without special knowledge and experience, be heard to say in a court of justice what caused a particular person's death? Legally, he would not be qualified to speak, and hence could not testify. An expert, by reason of his knowledge and experience, would, however, be qualified to testify upon the subject, and hence would be permitted to state what caused the ptomaine poisoning. It is said, however, that while a physician may state the disease which caused the death, he may not state what caused the disease. If that be so, our statute does not mean what it says.

Again, in case a person's death is caused by any deadly poison, how can a physician state the disease that caused the death? Suppose a person purchased mushrooms from a dealer which turned out to be noxious and the purchaser partook of them and died. What disease would then be the cause of death? Clearly, none. In case of death caused by poison, therefore, it matters not from what source the poison entered the system, if it produced death, the physician can only state what in his judgment caused death, and in doing so must do precisely what was done in this case, namely, state that a par-

ticular poison caused the death. Under the statute the physician is required to state the particulars, all of which are treated as statements of fact.

If the death and birth certificates required by our statute can be introduced in evidence only for the purpose of showing that A. or B. died, or that C. or D. gave birth to a child, then the very purposes for which the certificates were designed is frustrated. Moreover, if it be held by the courts that such certificates may not be used as evidence for the purposes indicated, then it necessarily follows that it is the courts, and not the Legislature, that are administering the police power of the state as that power applies to birth and death certificates. In our opinion, the action of the Legislature, in providing for such certificates and in making them prima facie evidence of the facts stated therein, when the facts stated conform to the statute, is a wise and proper exercise of the police power of the state and should not only not be interfered with by the courts, but should be enforced by them.

It is, however, insisted also that the court erred in charging the jury. There is no merit to that contention. The court followed the law as laid down by this court in the case of *Walters* v. *United Grocery Co.,* 51 Utah, 565, 172 Pac. 473, L. R. A. 1918E, 519.

Nor did the court err, as contended, in refusing appellant's requests to charge. The matters contained in the requests were fully covered in the court's general charge, and hence nothing could have been gained by charging as requested.

The assignments that the court erred in the admission of certain evidence is wholly without merit, and hence need no special consideration.

On behalf of the respondent it is urged that the appellant waived his right to object to the court's ruling in admitting the death certificate in evidence for the reason that the appellant had made the attending physician his own witness, etc. In view of the conclusion reached by the majority of the court, it is unnecessary to consider that question and we express no opinion upon it.

From what has been said it follows that the judgment should be, and accordingly is, affirmed, with costs to respondent.

CORFMAN, C. J., and THURMAN, J., concur.

GIDEON, J. (dissenting). The authorities respecting the admissibility of death certificates in evidence in actions between private parties, such as the present case, are not in harmony. Under statutes similar to ours the Supreme Courts of Michigan, Wisconsin, and Connecticut and the Courts of Appeals of Illinois and Missouri have held such certificates to be admissible. *State* v. *Pabst,* 139 Wis. 561, 121 N. W. 351; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 52 Atl. 490; *Krapp* v. *Metropolitan Life Ins. Co.,* 143 Mich. 369, 106 N. W. 1107, 114 Am. St. Rep. 651; *National Council, Knights and Ladies of Security,* v. *O'Brien,* 112 Ill. App. 40; *Ohmeyer* v. *Supreme Forest, Woodmen Circle,* 91 Mo. App. 189. On the other hand, the Court of Appeals of New York and the Supreme Court of Indiana determined that the provision of the statute making a death certificate, or a certified copy thereof, prima facie or presumptive evidence of the facts therein stated, did not make such certificate admissible in evidence in the face of a statute similar to our sections 7123 and 7124, and that it did not change the ordinary rules against hearsay evidence in an action between private parties. *Davis* v. *Supreme Lodge, Knights of Honor,* 165 N. Y. 159, 58 N. E. 891; *Beglin* v. *Metropolitan Life Ins. Co.,* 173 N. Y. 374, 66 N. E. 102; *Brotherhood of Painters, D. & P.,* v. *Barton,* 46 Ind. App. 160, 92 N. E. 64.

In the fifth headnote to *Brotherhood of Painters, D. & P.,* v. *Barton,* supra, which reflects the opinion of the court, it is said:

"Acts 1907, c. 152, entitled 'An act to collect accurate records of death, * * * contagious diseases, * * * prescribing the duties of the state board of health,' etc., and requiring physicians to report to the health officers all deaths, and that records of deaths shall be kept by the health officers, etc., was enacted in the exercise of the police power to prevent the spread of contagious dis-

eases and to promote the public health, and does not interfere with private rights or create a new rule of evidence, and a record of a board of health giving the cause of death of a member of a fraternal association is not admissible in evidence in an action on the certificate."

It is evident from the provisions of title 94 of our Code that the primary intent and general purpose of the act is to prevent the spread of contagious or infectious diseases as well as to aid the boards of health in devising ways and means by which infectious or contagious diseases might be controlled; in short to furnish boards of health and the medical fraternity with such information that as a result needed rules might be promulgated and such provisions taken as are necessary to protect the general health.

The Legislature, however, has the undoubted right and authority to establish rules of evidence and to at least determine what shall constitute presumptive or prima facie evidence of the facts sought to be proved. In the exercise of that right in section 5058, supra, it is stated that a death certificate or a copy shall be prima facie evidence in all the courts of the state of the facts therein stated. The Legislature in this enactment was, however, dealing with the public health, not with the rules of evidence to be enforced in the determination of rights between private parties. What the Legislature may have required the attending physician to include in his certificate in an effort to furnish the boards of health with the necessary information to carry into effect the general purposes of the act is one thing, and making the information contained therein prima facie evidence is quite another. It will be observed that the section makes the certificate or a copy prima facie evidence of the facts therein stated. In each of the cases cited by both the appellant and respondent, except the case from Wisconsin the question arose in an action brought to collect upon a life insurance policy. In none of those cases did the attending physician attempt to set out how or from what cause the disease originated or developed. The certificate simply named the disease causing death. In the present case there is no question that the child died of ptomaine poisoning. The only controversy is as to the cause

of such poisoning. The certificate was not essential to establish the fact of death or the disease that caused the same. The physician in his certificate, under the subdivision "Cause of Death," wrote: "Ptomaine poisoning from decomposed meat." Let it be conceded that medical science has advanced to that degree of exactitude whereby it can be determined as an absolute certainty that a patient is afflicted with a particular disease or ailment. It will not, however, be contended, I assume, that medical science can determine with any degree of absolute certainty what caused such disease, especially when, as in this case, the disease may have resulted from different causes. In the very nature of things, whatever information the physician may have as to the cause of the disease, in a great many cases at least, must be acquired from information obtained from others, and not from his attendance upon the patient. In support of appellant's contention that the statement in the death certificate respecting the cause of the disease in this particular case was merely a conclusion of the physician wholly unsupported by any professional judgment based upon no proven fact, and for that reason not entitled to be designated a fact, in the cross-examination of the physician the following appears:

"Q. It is a matter of fact that you nor any other person cannot tell what caused the child's death except your judgment would be ptomaine poisoning? A. Yes, sir; that is true. Q. You cannot tell whether it was decomposed meat or ice cream, or what it was? A. Just as a matter of judgment. Q. And so, when you filed this certificate with the State Board of Health and stated the cause to be from ptomaine poisoning, you simply did it because that was your judgment? A. That is right. Q. You might have been mistaken? A. Of course. * * * Q. So, when you made this certificate here, it was simply a guess on your part, wasn't it, that this child died from eating decomposed meat? A. It was my judgment. Q. What? A. It was my judgment. There is a difference between a guess and a judgment. You guess on the roulette wheel, but you use judgment in other matters. Q. You used—it was your judgment? A. Yes, sir. Q. There was nothing certain about it? A. I would have to say that I would be a— Q. Was there? Tell us. A. Why, no; of course not."

That is is advisable and frequently in the interest of the state that a public record be kept of the births and deaths

of the inhabitants of the state cannot be well doubted.   Such record, when kept as provided by law, ought to be competent evidence of the fact of such birth or death and is of interest to the public and a method or means of proving facts which it might be difficult in a great many cases to otherwise establish.   But I cannot believe or conclude that the Legislature, by the enactment of section 5058, supra, intended to nullify and set aside the ordinary rules of evidence and make competent ex parte statements, or hearsay testimony, respecting the cause of the disease resulting in death in actions between private parties.   No case is cited that so holds.   In this case the gist of the entire question to be determined by the jury was the cause of the disease.   No analysis has been made of either the meat or the ice cream.   The sickness followed in a few hours after eating both the meat and the ice cream.   There was no direct evidence that either the meat or the ice cream was poisonous.   The conclusion could only be drawn from the facts and circumstances surrounding the sickness and death. If there were any question in the case as to the death of the minor or as to the disease causing death, to the extent of establishing such facts the certificate ought to be and would be admissible.   But as to the cause of the disease that is not only an indirect way of getting the knowledge of the physician acquired in attending the patient before the court, but it goes farther than that and sets aside and makes admissible and prima facie evidence an ex parte statement based upon no demonstrable physical facts.

It is, however, insisted by respondent that, if the plaintiff was entitled in the first instance to object to the introduction of the death certificate, that objection was waived by the extensive cross-examination of the physician who made the certificate.   That contention is not supported by the authorities. Bower, Law of Waiver, § 419; *Carpenter* v. *Ginder,* 1 Wis. 243; *Pratt* v. *Missouri P. R. Co.,* 139 Mo. App. 502, 122 S. W. 1125.

For the reasons indicated, I dissent.

WEBER, J.   I dissent from the prevailing opinion.

### On Rehearing.

FRICK, J.   Counsel for appellant has filed a petition for rehearing in which he insists that this court erred in affirming the judgment.

In the brief filed in support of the petition counsel concedes that "the death certificate is prima facie evidence   *   *   * that death was caused from ptomaine poisoning." He, however, contends that we erred in holding that the physician's certificate was admissible in evidence for the purpose of showing the primary as well as the immediate cause of death. The statutory requirement is that the attending physician, in the certificate of death, shall state the "cause of death, including the primary and immediate causes and contributing causes or complications, if any, and the duration of each." The statute, therefore, makes it just as essential to state the "primary" or initial cause in the certificate as it does the last or "immediate" cause of death. If the Legislature can require the physician to state the immediate cause of death and can make that statement in the certificate prima facie evidence, upon what theory or process of reasoning can it be held that the Legislature may not require him to certify the primary cause and make that statement prima facie evidence? The matter of requiring death certificates comes directly within the police power of the state, and, as pointed out in the opinion, has been so recognized from time immemorial both in the civil and common law, and hence is under legislative, and not judicial control. While it is true that the regulation, whatever course it takes, must not exceed the bounds of reason, how can a court say that it is a reasonable regulation to require the attending physician to certify the immediate cause of death, but that it is manifestly unreasonable to require him to certify in connection with the immediate cause the primary causes? If the immediate cause comes within the power to regulate, then it necessarily follows that the primary cause is also within that power. Primarily it is a matter for the Legislature to determine to what extent the regulation shall go for the protection of public as well as private interests. In order to fully protect those in-

terests it may well be that a statement of the primary and contributing causes are quite as material and important, if not more so, than is the statement of the immediate cause of death. Under certain circumstances private interests may not be fully protected by a mere statement of the immediate cause of death. Merely to require that may in certain instances shed little, if any, light upon the real cause which resulted in death. Indeed, a careless or unscrupulous physician could make a statement concerning the cause of death so as to conceal rather than disclose that cause. Where, as here, a person is concerned in knowing the real cause of death, but doubts the statement of the attending physician, he can, by placing the certificate in the hands of an expert and one who has experience and training in the science of medicine, learn the real cause of death. An expert, by reason of his knowledge and experience, in case the primary and contributing causes and complications and symptoms are stated, can readily determine whether the immediate cause of death is correctly stated in the certificate or otherwise. If, upon the other hand, nothing is stated except the bare immediate cause of death, no one, however experienced or expert he may be, can determine the truth from the statement in the certificate. To require the statements the statutes requires, therefore, may be a safeguard against fraud and deception which can be detected from an inspection of the statements contained in the certificate. Then again, to require a full statement of all the causes and complications, if any, conforms to a sound rule of evidence, in that it presents the whole case and not only a fragmentary part. Where the statements fully comply with the statute and are admitted in evidence, they may afford a protection to the attending physician as well as to those who may be interested in the cause of death, while if only the immediate cause of death is stated and the case has become stale by lapse of time injustice may result which can be avoided only by a complete statement of all the causes, complications and symptoms. The statutory requirements, therefore, tend to protect rights rather than otherwise. If, therefore, the Legislature may make the statement of the

immediate cause of death prima facie evidence, it can also make the primary and contributing causes prima facie evidence. To hold otherwise would result in substituting the judgment of the courts for that of the Legislature, whose province is to regulate the matter within the bounds of reason. This court is too firmly committed to the doctrine of noninterference with legislative acts, unless · such acts are clearly and palpably in disregard of some constitutional provision or are manifestly contrary to public policy, to now undertake to depart from that doctrine. How can a humane and carefully considered regulation like the one in question be held to be in contravention of either the Constitution or public policy?

The petition for rehearing should be, and accordingly is, denied.

CORFMAN, C. J., and THURMAN, J., concur.

WEBER, J., dissents.

GIDEON, J. (concurring in the order denying petition for rehearing). Every argument found in the petition for a rehearing was contained in the original briefs of counsel and considered by the court at the time the majority and dissenting opinions were handed down. So long. therefore, as a majority of the court are of the opinion that the Legislature, by section 5058, quoted in the opinion, intended to make the ex parte statements of the attending physician prima facie evidence not only of the disease that resulted in death, but also of the contributory causes which produced the disease, I can see no reason for granting a rehearing.

I fully concur that the statute "requiring death certificates comes squarely within the police power of the state." The police power is reserved for the protection of the public, not to determine private rights. As stated in my former opinion, no case is cited that holds such statements, respecting the cause which produced the disease as found in the death certificate in this case, admissible in evidence.